BOARD OF SUPERVISORS OF MADISON COUNTY *v.* WILLIAM H. POWELL ET AL.

LIQUORS, SALE OF.  *Local option.   Petition for election.   Signatures.   Powers of board of supervisors.   Code* 1892, §§ 1610, 280.

> In a contest as to the genuineness of the signatures attached to a petition for a local option election, the board of supervisors has no right, because its regular meeting is about to expire, to impose conditions upon the reception of competent evidence on the subject, since it has full power under § 280, code 1892, to adjourn to some subsequent day for the prosecution of the investigation.

FROM the circuit court of Madison county.

HON. ROBERT POWELL, Judge.

The appeal in this case brought under review the validity of an election held under the code provision regulating local option elections.    The board of supervisors held that the petition was subscribed by the requisite number of qualified electors, and ordered the election as prayed.    The appellees, citizens of the county who had resisted the making of the order for the election, prepared and had signed by the president of the board a bill of exceptions, and prosecuted an appeal to the next term of the circuit court.    In that court it was held that the decision of the board of supervisors was erroneous, and that the petition for the election should have been rejected, and a judgment was entered vacating the judgment of the board of supervisors, and dismissing the petition.    From that judgment this appeal was prosecuted.

The questions discussed in the supreme court were:

1. Whether the board had jurisdiction to enter upon an investigation on the face of the petition.

2. Whether it sufficiently appeared that the petition for the election was signed by one-third of the qualified electors of the county.

3. Whether the board, in investigating the question last mentioned, committed any error in the admission or rejection of evidence, or in certain of its rulings and decisions, of such character as to require the circuit court, on the appeal of contestants, to vacate its judgment ordering the election; and,

4. Whether the board was warranted in refusing to adjourn the hearing to a subsequent day in order that the contestants might be afforded an opportunity to introduce evidence to disprove the signatures appearing upon the petition, and in closing the investigation under the circumstances stated in the opinion of the court.

In a suggestion of error, which was overruled by the supreme court, it was also contended that an appeal did not lie from the decision of the board of supervisors.

*Cooper & Waddell*, for the appellant.

It appears by the bill of exceptions that at eleven o'clock Thursday night, one hour before the term would expire by operation of law, the contestants seemed first to have turned their attention to the real merits of the controversy. Then it was that, for the first time, they proposed to show that " names upon the local option petition were not the genuine signatures of the persons purporting to have signed the same, and that many names appeared upon the petition which were placed there without the authority of the parties purporting to have signed the same." At eleven-thirty o'clock P.M. the board declined to hear further proof in the matter, as the term allotted by law was about to expire, unless the contestants would point out to the board and make affidavit that, in their opinion, the signatures were not genuine, and, in such designated cases, the board proposed to hear evidence.

We ask the court to note the response which was made by the contestants to this requirement of the board. They stated that they had no sufficient personal knowledge of the subject to justify them in making an affidavit. In other words, when

put to the test, these contestants admitted that they had no personal knowledge that a single name upon the petition was not the genuine name of the party, and that they had no such sufficient knowledge on the subject as to form "an opinion as to the genuineness of the signatures." It will be noticed by the court that the board did not require an affidavit of personal and conclusive knowledge by the contestants that the signatures were not genuine; all that was required was that the contestants should make affidavit that they had no such information touching particular names as would warrant them in forming an opinion adverse to the genuineness of the signatures. In effect, the board said, that in the short time left, mere general objections and fishing examinations of witnesses would not be tolerated. It required the contestants to point out those names which they had some reasonable ground to believe were not genuine, and to make affidavits that, in their opinion, the names were not genuine, as evidence of the good faith of the contestants in challenging the names. The court will remember that this bill of exceptions is the bill of exceptions of the contestants, and it is fair to conclude that it states their case as fully and favorably as the truth will permit. And just here we desire to call the attention of the court to the fact that it is not suggested in the bill of exceptions that the contestants, in the proof which they had offered from eleven o'clock to eleven-thirty, had successfully assailed a single name appearing on the petition.

The record does show that the contestants were allowed to proceed in the introduction of evidence for a half hour, but what that evidence was, whether it supported or tended to support the contention of the contestants, that some names were improperly on the petition, is sedulously and carefully omitted. Because the record does not state what this proof was, or that a single name on the petition was sufficiently challenged to give rise to a claim by the contestants that it ought to be stricken from the petition, we are justified in asserting, that in all the

evidence introduced, no suspicion was cast—as to a single name —upon the legality and integrity of the petition.

We have this far reviewed the action of the board for the purpose of showing that all reasonable opportunity was afforded to the contestants to object to the validity of the petition; to introduce evidence touching the genuineness of the signatures, and to participate in the investigation of the question as to the number of qualified electors in the county.   And we respectfully submit that if it be the law that the board might treat the petition as *prima facie* evidence of its genuineness, no shadow of error is shown or suggested in the proceedings of the board, and that no just ground of complaint may be made; that the hearing was not postponed to a future term.   The contestants were before the board, pending the whole examination, they were alert and fertile in objections; they were parties to, and participants in, the whole investigation, which covered many days, and in all that time, as far as the record shows, failed to interpose a single substantial or plausible exception to the proceedings and rulings of the board.

There stands out upon every page of the record a manifest and clear purpose on the part of these objectors to delay and protract the hearing, to defeat the call of the election by hook or crook, to make a case as they went along by procuring the withdrawal of names from the petition, pending the investigation.

The bill of exceptions is the bill of contestants.   It states their own case as strongly, we may be sure, as it could possibly have been stated.   It shows, as we have seen, an effort to entrap the board, by making a motion which implies, by necessary inference, that the board had excluded from the list of qualified voters of the county, the names of certain persons, because they had not paid their taxes on or before the preceding February. This the board, as the bill of exceptions states, had not done, and it is impossible to conceive how the motion could have been made in good faith and for an honest purpose.   We respect-

fully submit that no error was committed by the board in any of its proceedings which we have noticed, and that, with entire propriety and a just regard of the rights of all parties, it closed the investigation, and made its final order when the time at which the term would end was within a few minutes of its expiration.

The petition was *prima facie* evidence of its own legality. The error into which we think counsel for the appellant and the court below fell, was in assuming that this was a cause pending in court, to which the ordinary rules of evidence and procedure were applicable. We think it demonstrable upon reason and authority, that such is not the character of this statutory proceeding. The whole subject partakes of the nature of a police regulation, and the requirement is made that a designated proportion of the qualified voters of the county shall petition for the election, in order that the public may be protected against the expense and excitement incident to such contests, unless there is a well-formed public sentiment, which ought to be afforded an opportunity for expression, and the lawmakers very justly assumed that when one-third of the qualified electors of the county desire the question of sale or no sale of intoxicating liquors to be submitted to a popular vote, that there exists a definite and settled public opinion, which ought to be heard, and which ought to determine whether or not sales should be permitted. *Williams* v. *Citizens*, 40 Ark., 290; *Giddings* v. *Wells*, 99 Mich., 221; *Crews* v. *Coffman*, 36 Neb., 822.

*Chrisman & Howell*, on same side.

Section 278 of the code provides that the sessions of the board shall not exceed four days, except for the transaction of revenue business. There may be called terms at the expense of the members, but which they are not bound to call, and not bound to hold, and are not more likely to call or to hold than are other courts, when they can avoid it, especially when they are not allowed pay. We ask the court to note that the local

option law is so framed that it does not admit of a continuance of the case from one term to the next; for it provides that the election, if ordered, must take place in forty days after the filing of the petition. Section 1610. A failure, therefore, to reach a decision, or a continuance of the case from one term to another, amounts to a defeat of the petition. After spending four days in purging the list of petitioners, so as to ascertain who were, in truth, the qualified voters of the county, and applications for withdrawal of names from the petition, the board was called on, by motion of contestants, to dismiss the petition. This motion was made at eleven o'clock at night. The contestants then moved to be allowed to show that many of the signatures were not genuine, and to offer testimony to that end. The board consented, and allowed them to proceed on that line, taking their testimony, and at thirty minutes before midnight, the time for adjournment, they called a halt, and required the contestants, before they proceeded further, to point out to them the names on the petition which were not genuine, and make oath that they believed that they were not genuine. Right here we desire to call attention to the fact that the bill of exceptions fails to disclose the testimony taken in the half hour allotted them to prove the non-genuineness of the signatures. As to what evidence was given upon this subject in that effort of theirs there is significant silence. That they examined the men who carried the petition around is, of course, probable. That they proved a single signature was not genuine does not appear. Whether they were confounded by the testimony which was offered during that time and proposed now to rebut it, or whether the contestants, during that period, obstinately and insultingly trifled with the court in the fast-dying hours of its session, is not disclosed. But something moved the board to demand that the counsel should confine their testimony to such signatures as they desired to attack, and on what occurred they made the ruling. The board did not require the contestants to swear that the signatures were not genuine, which they

might have done, but only that these contestants believed they were not genuine. Is it too much to say that these gentlemen were attempting merely to delay the proceedings till the hour of adjournment should arrive? Is it improper to suggest that they had no such witnesses as they pretended to have, since they neither named them nor the signatures their testimony would show to be non-genuine? It certainly is not too much to say that they did not believe these witnesses if they had such, because when, to protect the court from imposition, and facilitate its inquiry and business, they were simply asked to show their good faith by swearing that they believed there were names not genuine on the petition, they refused to do so. If they did not believe their own witnesses, what right had they to ask the board of supervisors to hear them and to believe them?

The board of supervisors supposed they had some discretion in ordering a method of procedure, and a right to protect themselves against being made mere cat's-paws. They had been patient, as the judiciary are patient, trained as they are to the exercise of that beneficent grace. What were they to do in this condition, with only one half-hour left them? We have no apprehension as to what the answer of this court will be. The testimony produced by contestants in the half-hour allotted them, to take proof of the non-genuineness of the signatures, is not given. They fail to set it out in their bill of exceptions. Why may we not conclude that it satisfied the board of the genuineness of the signatures? Before this event occurred, the board had treated the names as *prima facie* genuine. But here they had proof on the subject. The failure to put in the proof on the subject of the genuineness of the signatures is fatal to the contention here. One half-hour was spent on that line of investigation, and not one word of the testimony have they embodied in the bill of exceptions. Moreover, this bill does not pretend to contain all testimony taken on their part. Its recitals show that most of the testimony taken was omitted. It shows that time was given to the investigation of the gen-

uineness of the signatures, and the board of supervisors passed upon this jurisdictional fact, and adjudged that it existed. There is no proof to the contrary. There is nothing to cast the least suspicion in this whole record, after four days of examination, upon any single name signed to the petition. Surely, the contestants should have proved, in the time conceded to them, that some one of the signatures was placed upon it without the knowledge or consent of the apparent signer. If they had done this, it would cast suspicion perhaps upon the whole petition, but they have not left a shadow of suspicion upon any single name. The extraordinary war waged upon this petition, and their utter failure in the half-hour allowed them to cast even a suspicion on a single name, is itself equivalent to proof that the petition was above suspicion.

We concede that if the bill did not thus show that testimony was omitted, no presumption would be indulged as to the proof made, but where it shows, as it does in this case, the omission of the testimony, the rule of law is imperative that the judgment of the court must be upheld, and the recitals in the judgment, it will be conclusively assumed, were sustained by the proof. The large number of decisions on the subject in other states where the question has been examined, are collected and cited. 2 Enc. of P. & P., 437–441; *Commonwealth, etc.*, v. *Bowman*, 3 So. Rep., 220, (58 Ala., 425); *Massey* v. *Smith*, 73 Ala., 173; *Bowers* v. *Ross*, 55 Miss., 303; *Wells* v. *Smith*, 44 *Ib.*, 303; *Gale* v. *Lancaster*, *Ib.*, 414; *Cummings* v. *Johnson*, 65 *Ib.*, 342; *Stevens* v. *Mangum*, 27 *Ib.*, 481; *Bryant* v. *Rosenbaum*, 62 *Ib.*, 191; *Steadman* v. *Holman*, 33 *Ib.*, 550.

Conceding, also, for the sake of argument, that the court erred in its ruling, and the contestants were able to prove what they assumed to prove—"that many names appearing on the said petition were placed there without authority of the parties," *non constat*, that said proof would have reduced the ascertained

majority sufficient to have changed the result.    The bill does
not intimate that it would have done so.    It does not, therefore,
show the materiality of the rejected testimony.    Must it not do
that?    *Ferriday* v. *Selser*, 4 How. (Miss.), 506.

The law intended to leave a plain question of fact to five plain
men, whose good faith was counted on not to allow frivolous
contests and heap up costs by repeated elections.    They had a
right to investigate and decide on their own knowledge, or call
witnesses, as they thought proper, and were not expected or
required to put on record the testimony on which they acted.
This, of course, did not mean that they were at liberty to act
arbitrarily.    Any palpable violation of the law, as by dispens-
ing with authority to call the election upon petition, might
be taken advantage of on appeal.    A mere mistake could do no
other harm than create an unnecessary expense.    This was all
the one-third number of qualified voters was intended to accom-
plish.    It was to avoid the expense of frivolous contests.    In
this case the election was held and the expense incurred.    When
the appellants failed to perfect their appeal, and permitted the
election to proceed without a restraining order, and took their
chances before the people, they waived their appeal.

It is said there is no precedent for a waiver in such case.    Let
them show such a case as this.    We must first have a case be-
fore we have a precedent.    If there is no precedent, let the court
make one.    If the contestants had succeeded before the people,
they would have waived their appeal, for there would have been
nothing to try—certainly nothing but a question of costs.    It
is questionable if the law contemplates any such condition of
things as we have met in this case.    To hold that the contest-
ants may force a half dozen elections, until the board can suc-
cessfully run the gauntlet of their legal inquisitors and commit
no error, is an absurdity.    We do not believe the board of super-
visors is to be held, in the trial of local option cases, as a court
of limited and special jurisdiction.    But suppose it was, must not
every court try the question of jurisdiction if the exercise thereof

depends upon the existence of a fact? It is certain that the existence of a fact was challenged, and that the court tried the existence of the fact. That decision is final. *Gunn* v. *Howell*, 27 Ala., 663; *Pettus* v. *McLanahan*, 52 Ala., 60; *Wyatt* v. *Steele*, 26 Ala., 639.

*J. A. P. Campbell*, for the appellees.

The board of supervisors was without authority to order the election unless one-third of the qualified electors of the county petitioned for it, and its duty was to ascertain that fact. The jurisdiction is special, and depends upon a petition signed by the genuine signatures of the requisite number of qualified electors. *Ferguson* v. *Monroe Co.*, 71 Miss., 524; *People* v. *Smith*, 75 N. Y., 772; *People* v. *Spenser*, 55 N. Y., 1; *Wills-boro* v. *Railroad Co.*, 76 N. Y., 182; *Cogwin* v. *Hancock*, 84 N. Y., 532; *Craig* v. *Andes*, 93 N. Y., 405; *Mentz* v. *Cook*, 108 N. Y., 504; *Storin* v. *Genoa*, 23 N. Y., 439; *People* v. *Peck*, 62 Barb., 545; 66 Ala., 119; 69 Ala., 569; Black on Intox. Liq., sec. 91 *et seq.* In 29 Neb., 283 (a court appealed to by opposing counsel), it is expressly declared that the petitioners must prove the signatures. The failure of the board to ascertain by competent evidence the genuineness of signatures to the petition, and taking for granted that they were signed by the parties, was error. The statute, § 1520, code 1892, provides that "where the signature of any person is required by law, it shall always be the proper handwriting of such person, or, in case he is unable to write, his proper mark." This necessitates proof that the names appearing on the petition were signed by the proper handwriting or mark of the person. This is a proper safeguard against imposition by putting down names by others than the parties themselves, and should be strictly enforced. The board erred in not requiring proof of the signatures to show that they were genuine, signed by the persons themselves, as the statute requires, and the circuit court was right in reversing its judgment ordering the election. Except when relieved by statute,

a plaintiff in every case must prove the handwriting of a person whose name appears as signer of a writing, and that the person is defendant. Not only is proof of signature required, but proof of the indentity of the person is also required, and it is not sufficient that one calling himself by such name signed. 2 Greenl. on Ev., sec. 158; Phillips on Ev., 172; 12 Smed. & M., 124. This is said to call attention to the general rule pertaining to courts, and not to invoke the application of the rule in a case like this. The board having committed the error of assuming the genuineness and legality of the signatures, the contestants offered to prove that many names on the petition were not signed by the persons. Some testimony was heard on this matter, when the board refused to hear more, unless the contestants would designate particular names, and swear that they believed they were not genuine. This was the same error as before. Contestants had witnesses present, assumed the burden of proof which did not rest on them, and were proceeding, when the board interrupted and refused to hear further evidence as stated. This was a flagrant disregard of duty, and not justified by the near approach of the end of the session, which it was in the power of the board to extend according to the exigency. Code 1892, § 280. At all events, no condition could justify a disregard of law as to the genuineness and legality of the signatures, for a valid election could be ordered only on a petition, duly signed by one-third of the qualified electors, not a petition appearing to be so signed, but one in fact so signed, and of which there should be no doubt.

*W. H. Powell*, on the same side.

The petition at bar was not signed by one-third of the qualified electors, and no proof was made to the board that it was signed by any elector. The appellees appeared before the board and contested said petition, and denied the right of the board to call such election, for the several reasons assigned in the record, but chiefly because the genuineness of the signatures of the peti-

tioners was not proven, and that the requisite number of voters had not signed.   The board heard the contest and decided that it was not necessary to prove the genuineness of the signatures, and ordered a local option election, from which order appellees appealed to the circuit court, and, upon trial there, the circuit court vacated the order of the board of supervisors, from which judgment the appellant comes to this court.   The statute under which this election is called is a penal one and must be strictly construed against the appellant.   The board had no authority to call the election unless it was fully complied with.   Proof should have been made not only that the petitioners were qualified electors, but, also, that their signatures were genuine. This was a mere *ex parte* proceeding, and there was no privity or contractual relation between the proponents and contestants before the board, and § 1797 of the code of 1892, has no earthly. application to the proceeding at bar.   If the order calling the election was illegal, then the election itself is illegal, for the election was only the result of anterior proceedings, and must have been predicated of authority to hold it.   This is so clear that it does not admit of argument.   Section 1797 applies to suits upon contracts or dealings had between the parties.   The whole section must be construed together.   In the proceedings at bar the burden was upon the petitioners to show that the signatures were genuine and true, just as they should have proved any other material fact precedent to obtaining relief.   No denial under oath, therefore, was necessary.   Appellees offered to prove that they were not genuine, but this right was denied them by the board.   I therefore submit that the order of the board calling the election, and the election itself, were illegal and void, and that this case should be affirmed.

*J. W. Downs*, on the same side.

Section 1610 of the code requires that the petition presented to the board of supervisors by one-third of the qualified electors shall be signed by the petitioners.   The board of supervisors

was by the act constituted a special court with limited jurisdiction, before whom there was to be had the judicial ascertainment of the existence of certain facts, and these facts were to be established by proofs as facts are proved in other courts.   If we change the language of the act so that its terms would require the petition to be signed with their genuine signatures it would not change the meaning.   Could the court with limited jurisdiction assume that the signatures were genuine ?   It was not a petition at all till signed by somebody, and the law does not make the petition evidence of anything.   If there had been no protest at all before the board, the petitioners would have been required to prove the genuineness of the signatures.   It was insisted in the court below that to require proof of that fact would be inconvenient.   That is no answer; thus the law is written. But it would be but little trouble for one person to canvass one supervisor's district and be a witness to each name signed, and then, when the petition was presented to the board, have each person who canvasses, to come before the board as a witness, then five witnesses could make proof of all the names.   It never was intended that an indefinite number of petitions should circulate through a community till they presented the appearance of mutilated currency, and in that condition be presented to the board and prove themselves.   Section 1797 of the code (1892) has no application here.   The written instrument referred to in that section is one in which some personal liability is sought to be fixed upon the party whose name is signed to it.   The plea of *non est factum* is interposed by the party whose name appears to the instrument.   How could the protestants interpose such plea for the parties whose names appear upon the petition ?

The act under which this proceeding is had, construed as a penal statute, required proof to be made, and the common law required the same.

*F. B. Pratt*, on the same side.

The board held that the petition was *prima facie* evidence of

the genuineness of the signatures.    Section 1797, code 1892, refers solely to instruments sued on and set out in the pleadings for plaintiff, and instruments set up in the pleadings for defendant.    In all other cases the common law rule prevails that signatures to written instruments must be proved.    *Dancey* v. *Sugg*, 46 Miss., 612; *People* v. *Smith*, 45 N. Y., 780; *Smith* v. *People*, 45 N. Y., 780; *Gould* v. *Starling*, 23 N. Y., 461.

The record recites that the protestants, at eleven o'clock Thursday night, offered to prove that many names upon the petition were not genuine signatures of the persons named, and that many names were placed upon the petition without the consent of the parties purporting to have signed.    The protestants proceeded with such proofs until eleven-thirty o'clock—for the long space of thirty minutes—when the board declined to hear further proofs in the matter, as the time allotted was about to expire, unless protestants would make certain affidavits, etc. What the "allotted time" was does not appear from the record, and the statute is silent as to any limitations of time for consideration of such matters.

The record recites that the protestants had witnesses in court to prove the non-genuineness of many signatures on the petition, and insisted on proceeding with their proof, but the board abruptly brought the proceedings to a close and proceeded to render judgment.    A most arbitrary and unheard of proceeding, to say the least, and which of itself makes the proceedings void, for, unless there was on the petition the requisite number of genuine signatures, the board had no jurisdiction to act.

The protestants proposed to show by proofs that names which appeared upon the registration books, and which had been omitted from the list of legal voters made up by the board, were legal voters.    The board refused to hear the proofs offered or to consider the proposition to add said names to the list of legal voters, upon the ground that they had already passed upon that question.

It will be seen by the record that in making up the list of

legal voters the board acted upon their own knowledge and upon information from bystanders. In *People* v. *Smith*, 45 N. Y., 780, hereinbefore referred to, the court says: "It is clear that the judge could not act upon his personal knowledge of any fact, but must be governed by the proofs taken."

Argued orally by *T. E. Cooper* and *J. B. Chrisman*, for the appellant, and by *J. A. P. Campbell* and *F. B. Pratt*, for the appellees.

WHITFIELD, J., delivered the opinion of the court.

In the course of the investigation before the board of supervisors, at 11 o'clock, Thursday night, the appellees offered to prove that "many names which appeared upon the local option petition were not the genuine signatures of the persons named, and that many names appearing upon said petition were placed there without the authority of the parties purporting to have signed said petition." This presented a vital issue. The board recognized the materiality of the issue, and allowed appellees to proceed with such proof until 11:30 P.M., when "the board declined to hear further proofs in the matter," unless the appellees would point out the signatures that were not genuine, and make affidavit that "in their opinion" the signatures were not genuine. Appellees declined to do this, saying they had no sufficient personal knowledge to warrant them in making such affidavit, but "insisted that they had witnesses in court to prove the non-genuineness of many other signatures to said petition, and insisted on going on with their proofs, and asked that the session be continued till the next day, in order that they might complete their proofs." This the board declined to permit, unless the names were pointed out, and the affidavit made. It will be noted that the materiality of the issue was distinctly recognized, and that the ground of the refusal was expressly stated to be that the time allotted for the regular meeting would expire at midnight, and that the appellees asked

that the investigation might be continued on the next day, only one day being asked for.

It is perfectly manifest, from the bill of exceptions and the whole course of the investigation, and from the briefs of the learned counsel for the appellants, that the board acted in ignorance of the plain provision of the statute—§ 280, code of 1892—that the board could at this "regular meeting, by an order on its minutes, adjourn to meet" the next day. Such is the plain declaration of the law, and, in view of the vital character of the issue made, it was the clear duty of the board to have so adjourned till the next day, and heard the proof. And the judgment of the circuit court vacating the order for the election, made without so adjourning, and affording appellees a reasonable opportunity to make the proof, is, for that reason,

*Affirmed.*