SIMPSON COUNTY *v.* BURKETT *et al.*

(Division B. Feb. 15, 1937.)

[172 So. 329. No. 32561.]

W. M. Lofton, of Mendenhall, for appellant.

**King & Berry,** of Prentiss, for appellees.

A. S. Scott, of Laurel, amicus curiae for appellees.

Argued orally by **W. M. Lofton** for appellant, and by **Ovie L. Berry**, for appellee.

**Griffith, J.**, delivered the opinion of the court.

At the May, 1936, term of the board of supervisors of appellant county, a petition of more than 20 per cent. of the qualified electors of the county was presented requesting the board to call an election under section 2, chapter 171, Laws 1934, to determine whether beer and light wines should continue to be sold in the county. The board examined this petition and found that it contained the requisite number of names of qualified electors, and decided to order an election to be held on June 2, 1936. The clerk orally informed the election commissioners, and they published notice in a public newspaper published in the county in the issues of May 7, May 14, May 21, and May 28, more than three weeks but less than thirty days before the date fixed for the election. The board adjourned on May 6, but the aforementioned order making the jurisdictional adjudication, and ordering the election, was not actually spread on the minutes until May 27, 1936, and the minutes were not signed by the president of the board until the last-mentioned day. Therefore, there were but six days from the time of the entry of the order until the election. The election resulted in a majority for the exclusion of beer and wine, and appellees, who were licensees and in-

terested in the sale of said beverages, protested by written objections filed at the June, 1936, term of the board, raising the above questions, among others.

The board overruled the protests and allowed a bill of exceptions which set up the foregoing facts, together with others, and upon the hearing thereof the circuit judge held the proceedings invalid and the election void, from which judgment the county has appealed.

In ordering an election under the statute here involved, the board proceeds as a tribunal of special and limited jurisdiction; so that it is a jurisdictional prerequisite that the statutory petition be presented to the board and that the board examine the same and adjudicate that the petition contains the number of names of qualified electors prescribed by the statute; and there is no power in the board to order an election in response to such a petition until that adjudication has not only been made, but also has been actually entered on the minutes of the board. In Broom v. Board of Sup'rs, 171 Miss. 586, 593, 594, 158 So. 344, 345, the principle involved was fully discussed and there it was said: "When a court of general jurisdiction has proceeded with a case, it will be presumed that the court has ascertained that it had jurisdiction to act, and no special adjudication thereof on the minutes of the court is required. 15 C. J., pp. 827, 828. But as to tribunals of special and limited jurisdiction, no such presumption is indulged; so that not only must such a tribunal inquire and determine whether it has jurisdiction to proceed, first before it does proceed, but there must be entered upon the minutes of the tribunal of special and limited jurisdiction the affirmative recitals to the effect that the tribunal has inquired into the facts which give it jurisdiction, and that the tribunal has found to exist every fact which is essential to the exercise of its jurisdiction in the particular matter. . . . Board of Supervisors v. Ottley, 146 Miss. 118,

129, 112 So. 466; West v. Town of Waynesboro, 152 Miss. 443, 449, 119 So. 809. See, also, Adams v. First Nat. Bank, 103 Miss. 744, 60 So. 770; Boutwell v. Board of Sup'rs, 128 Miss. 337, 343, 91 So. 12; Great Southern Lumber Co. v. Jefferson Davis County, 133 Miss. 229, 235, 97 So. 545; Gilbert v. Scarbrough, 159 Miss. 679, 686, 131 So. 876. Without an adjudication of the essential jurisdictional facts and the entry of that adjudication upon the minutes, the facts had as well not exist at all.'' Inasmuch as the jurisdictional order was not actually entered until May 27, there was between that date and June 2d, the day of the election, such insufficient period of time as to make it obvious and beyond the range of any sort of fair argument that no proper or reasonable notice to the voters was thereby given.

But appellant contends that the oral evidence by which it was shown that the said jurisdictional order was not entered until May 27, is inadmissible; that because the minutes now show on the face thereof that the order was entered on May 6, the day of the adjournment, and that the president of the board signed the minutes on that day, it is incompetent to prove to the contrary by parol evidence. This contention is well supported by the texts, see for instance 10 Ency. Ev., p. 956, and by several of our early cases; but considerable difficulty is presented by our late decisions, particularly by Watson v. State, 166 Miss. 194, 146 So. 122, wherein it was held that it could be shown by parol evidence that the minutes of the circuit court were not signed before adjournment, as required by section 750, Code 1930, which requirement also now applies to the minutes of the board of supervisors as is seen by the concluding sentence of section 211, Code 1930, and which requirement in its present terms was not included in older statutes. Another interesting recent case is Hammond-Gregg Co. v. Bradley, 119 Miss. 72, 80 So. 489, wherein the danger of allowing

minutes to stand open after actual adjournment is pointed out.

We are informed that, throughout the state, many boards of supervisors instead of obeying said section 211 will allow the clerk or the attorney of the board merely to take notes of the orders to be entered, and that after the board has adjourned the orders will be drawn out and entered on the minutes, and when this has been done the president will be notified, whereupon he will call at the clerk's office and sign the minutes as of the day of actual adjournment, so that the other four members of the board never see the minutes nor hear them read. And we are also informed that under this practice, orders are sometimes prepared after adjournment in respect to matters which never came before the board in session, but that such orders so drawn would be taken around to the individual members of the board and, upon consent of all of them, the order would be written upon the minutes and afterwards the minutes would be signed by the president as of the day of adjournment.

It is thus made apparent that serious consequences would inevitably result if we should hold that section 211 is mandatory and may be inquired into by parol, as was involved in the Watson Case, supra, in respect to the minutes of the circuit court, and, on the other hand, the dangers of the allowance of the practices mentioned in the preceding paragraph are equally apparent. What the boards should do is to recess to a fixed day when all the minutes will have been entered and when upon reconvening the completed minutes can be read to all the members or a quorum and then signed by the president. We have determined that by reason of the seriousness of the question which we have been discussing to pretermit decision of it at this time, trusting that with what we have said there shall be such a return to obedi-

ence to the statute, section 211, that it will not hereafter be necessary to decide the far-reaching question.

We do not decide the aforementioned question, as it is unnecessary so to do in this case, for the further reason that we deem it more important, so far as concerns the statute now under consideration, to decide the question of the notice required to be given the qualified electors of the county when an election is ordered under the statute. The only provision in the statute bearing upon that question is that the election shall be held "under the election laws of the state." It has never anywhere been contended, and evidently was not the purpose of the statute, that these elections could be held only on general election dates. Manifestly, special elections were contemplated and that public notice should be given the electors of the county of the date and purpose of the said special election.

Elections in a number of counties have been held under the statute, and as a result of the failure of the statute to prescribe in express terms the notice necessary to be given, we are informed that there has been such a diversity of opinion upon that point that these elections have been held upon notices varying all the way from fifteen to thirty days; and, as other counties will be holding such elections, we say, therefore, that we deem it the more important that we decide that question in this case, rather than the question first discussed, to the end that future elections under this statute may be validly held, and that as to those heretofore held under an insufficient notice, new proceedings may be taken, if desired, so as to conform to the ruling which we herein announce; in which connection we must add that the concluding provision of section 2 of the statute to the effect that an election on this question shall not be held in any county oftener than once in two years has no application or reference to an election which is for any reason in-

valid for an invalid or void election is no election and therefore does not prohibit another upon the same subject.

The statute having failed to expressly prescribe the notice necessary to be given, many of the bar, as already noted, and some of us here have been under the impression that the case, James v. Board of Sup'rs, 150 Miss. 489, 117 So. 111, is applicable and controlling. In that case it was held that eighteen days' notice was reasonable and sufficient for a school district election; but that controversy involved only a small part of the county and wherein only forty-eight votes were cast. Upon prolonged consideration and repeated conferences, we have concluded that we would not be warranted in extending or enlarging upon the decision in that case so as to make it apply to or include a matter affecting the entire county and of the nature here being considered, particularly in view of the closer analogy of those particular statutes providing for elections upon general county-wide propositions which we think are controlling in a matter such as we have here before us, and to which statutes we shall now refer.

When a statute provides for an election submitting a matter or matters of county-wide policy to the voters of the entire county but prescribes only that the election thereunder shall be held under the election laws of the state and is silent as to the notice necessary to be given it becomes the duty of the court to resort to and apply such of the election laws as bear the closest analogy to the election provided for under the statute presently being considered, 59 C. J., p. 1041 et seq.; or to state the same principle in other words, a statute must be construed, so far as concerns the particular question at issue, as nearly as may be in accordance with the general system of which it forms a part, and for this purpose statutes upon cognate subjects may be resorted to al-

though not strictly in pari materia. Lewis' Sutherland Statutory Construction (2 Ed.), p. 848; 25 R. C. L., pp. 1052, 1053, note 15. Applying and following the foregoing settled rules, we have concluded that sections 310 and 311, Code 1930, are here the closest of all among our statutes in point of analogy.

Section 310 reads as follows: "Unless otherwise specifically required by law, the board of supervisors of any county shall upon the filing of a petition touching any matter affecting the entire county and over which it has jurisdiction, signed by twenty-five per cent. of the qualified electors of the county, either pass an order putting said proposition in force and effect or immediately submit the same to a vote of the qualified electors of the county, after giving thirty days' notice of said election, said notice to contain a statement of the proposition to be voted on at said election. If said election shall result in favor of the proposition petitioned for, the board of supervisors, shall pass the necessary order, to put the said proposition in force and effect. In the event the election shall result against the proposition submitted, no other election shall be held on the same, or substantially the same proposition within twelve months of the date of the prior election: Provided that this section shall not apply to the creation of taxing districts;" and section 311 is in the following words: "The tickets to be used in said election shall have a substantial synopsis of the proposition petitioned for, printed thereon, and next below shall have the words, 'For the Proposition'; and the words 'Against the Proposition,' next below. In making up his ticket the voter shall, if he favors the proposition, make a cross (x) opposite the words, 'For the Proposition' on his ticket; or if he does not favor the proposition, he shall make a cross (x) opposite the words, 'Against the Proposition.' "

It will be noted that the petition mentioned in those sections require 25 per cent. of the qualified votes, whereas the petitions here require only 20 per cent., and it will be seen also that the board cannot put the petitions in effect on the receipt thereof as to the beer and wine statute, except after election. But even with these differences, there are no other statutes to which resort may be had with any such assurance and dependability as to closeness of analogy as these two as respects the submission to the voters of a county-wide proposition of the nature of that here involved. Therefore, under the rule of statutory construction hereinabove stated, the quoted sections must be applied with the exceptions mentioned; and as they require thirty days' notice, the learned circuit judge was correct in so holding and his judgment will be affirmed.

Affirmed.