COLEMAN *v.* BOARD OF SUPERVISORS CHOCTAW COUNTY.

Mar. 16, 1953

No. 38877 24 Adv. S. 10 63 So. 2d 533

*W. D. Coleman* and *J. D. Dobbs,* for appellant.

*Jack B. Carlisle* and *Creekmore & Beacham,* for appellee.

Lee, J.

W. D. Coleman appealed to the circuit court on a bill of exceptions from an order and resolution of the Board of Supervisors of Choctaw County, issuing county road bonds in the sum of $100,000. From an adverse judgment there, he appealed here.

On March 10, 1952, the board of supervisors, acting under Chapter 241, Laws of 1950, adopted a resolution, declaring its intention to issue the bonds of Choctaw County for road purposes in the sum of $100,000. The existence of all necessary conditions precedent was adjudicated. There was publication of notice, as required by law, of the intention of the bond to execute and deliver the bonds unless a petition, signed by at least 20% of the qualified electors of the county, protesting the issuance or calling for an election thereon, as provided by Section 5 of said Chapter, should be filed with the clerk at or prior to 5 o'clock P. M. on April 7, 1952.

At 9:05 A. M., April 7, 1952, there was filed with the clerk of the board a petition with 754 signers, more than 20% of the qualified electors of the county, praying that the bonds be not issued unless or until an election had been held thereon, in which a majority of the qualified electors should vote in favor of the issuance of the bonds.

The board did not canvass or pass upon the sufficiency of the petition at the following April meeting, but continued the same until the regular May meeting.

Thereafter, on May 5, 1952, a petition by 262 persons was filed with the clerk in which the petitioners averred that they had theretofore signed the petition protesting against the issuance of the bonds, unless authorized in an election; but that, after mature reflection and with a better understanding of the matter, they felt that the best interest of the county would be served by the issuance of the bonds. Petitioners requested the removal of their names from the original petition and stated therein that, by their signatures, they were removing their names therefrom, and were expressing themselves in favor of the bond issue.

Thereafter, on the same date, the board, by its order, adjudicated that a petition had been filed on April 7, 1952, but that the determination thereof had been continued until the May 1952 meeting; that the board had canvassed and carefully examined the petition and found that it contained only 494 qualified electors; that there were 3,332 qualified electors in the county, and that 494 did not constitute 20% of such electors in the county. And, said order and resolution directed the sale of the bonds on May 10, 1952.

The Legislature, prior to May 5, 1952, enacted a local and private bill, which purported to validate all acts of the board of supervisors theretofore taken in the matter of the issuance of these bonds; but the act did not validate the sale and delivery of such bonds, if a petition signed by at least 20% of the qualified electors of the county

should protest against the issuance or demand an election on or before the date set for objections therefor; and it expressly provided that, in such event, the bonds should not be executed and delivered until after an election in which the issuance should be approved.

The appellant's exceptions and complaints here amount to two reasons: (1) That the board, under Chapter 241, Laws of 1950, supra, and the local and private validating act, supra, was bound by the petition as filed on April 7, 1952, and could not thereafter remove any names from the petition; and (2) the proposed sale and delivery of the bonds on five days notice was unlawful.

We pass on the second objection first. Chapter 325, Laws of 1946, Section 4357-01, Code of 1942 Annotated, requires that bonds such as these "shall be advertised for sale on sealed bids or at public auction, which advertisement shall be published at least two times in a newspaper published in the county in which the political subdivision, instrumentality, or a part thereof is situated, or county in which the bonds are to be sold; and if no newspaper is published in such county, then in a newspaper published in an adjoining county; the first publication in each case to be made at least ten (10) days preceding the date fixed for the reception of bids; and such notice to give the time and place of sale."

However, it is expressly provided therein that the failure to advertise properly shall not invalidate the bonds, the statute being in these words: "A failure to comply with any provision of this act shall not invalidate such bonds, but any member of the governing board, commission, or other governing authority who . . . shall wilfully fail to give the notices herein required shall be liable personally and on his official bond for a penalty in each case of five hundred dollars ($500.00), and, in addition thereto, for all financial loss that may result to the county, . . . resulting from such wilful failure to comply herewith; . . ." The method for the re-

covery of such penalty and damages is also provided for therein.

Appellant concedes that the 494 names remaining on the original petition, after 262 had been stricken therefrom by reason of the counter petition, did not constitute 20% of the qualified electors of the county.

Now, it is well-settled that █ it is the duty of a board of supervisors to canvass the names on petitions filed with it in order to determine whether or not such petitions contain the required number with the requisite qualifications, and, that in doing so, the board acts judicially.

In Mohundro v. Board of Supervisors of Tippah County, 174 Miss. 512, 165 So. 124, this Court said: "The entering of the order for the election is the entering of a judgment, notwithstanding such judgment is mandatory if the required facts authorizing it exist. The finding of the necessary facts to authorize the judgment and the entering of the judgment' are both judicial actions. In determining whether the required number of qualified electors had petitioned for an election, appellee was acting judicially, . . ." See also Simpson County v. Burkett, 178 Miss. 44, 172 So. 329; Madison County v. Powell, 75 Miss. 762; Power v. Robertson, 130 Miss. 188, 93 So. 769; Green v. Hutson, 139 Miss. 471, 104 So. 171; Costas v. Board of Supervisors, 196 Miss. 104, 15 So. (2d) 365, 16 So. (2d) 378; Costas v. Board of Supervisors, 198 Miss. 440, 22 So. (2d) 229; and Miles v. Board of Supervisors, 33 So. (2d) 810 (Miss.).

 Practical considerations may delay the canvass. In Costas v. Board of Supervisors, reported in 196 Miss. 104, the Court said: "A board, careful of its duty and responsibility and considerate as well of the interests of those affected, may be required by practical considerations to delay its decision in order to afford an opportunity to itself and others to examine and verify the petitions and to check their sufficiency. No action

therein should be taken until it has determined this fact. Simpson County v. Burkett, 178 Miss. 44, 172 So. 329.''

■■■ Persons who have signed a petition, which has been filed with the board, have the right to take their names off at any time before final action by the board. In Price v. Sims, 116 Miss. 687, 77 So. 649, the Court said: ''This court has uniformly held that signers to a petition addressed to a board of supervisors or a municipality can take their names therefrom by signing a counterpetition.'' See also Rogers v. Hahn, 63 Miss. 578; Perkins v. Henderson, 68 Miss. 631, 9 So. 897; Ferguson v. Monroe County, 71 Miss. 524; Power v. Robertson, 130 Miss. 188, 93 So. 766; Miles v. Board of Supervisors, supra, and Allison v. Camp Creek Drainage District, 211 Miss. 354, 51 So. (2d) 743.

The number of signers and their qualifications are determined as of the date of the board's adjudication, and not as of the date of the filing of the petition. In the case of Miles v. Board of Supervisors, 200 Miss. 214, 26 So. (2d) 541, this Court said: ''Appellants next urge here the contention they made before the supervisors to the effect that the time as of which the number of qualified voters in the county and on the petition and the percentage on the petition must be determined is the meeting of the board at which the questions are adjudicated and not the date the petition is filed. Appellants are correct in that contention.'' See also Moffett v. Attala County, 181 Miss. 419, 179 So. 352; Costas v. Board of Supervisors, Allison v. Camp Creek Drainage District, Simpson v. Burkett, Price v. Sims, Perkins v. Henderson, Madison County v. Powell and Rogers v. Hahn, supra.

It follows therefore that the appellant's contentions are untenable, and that the trial court was correct in overruling his exceptions.

■■■ Appellee contends that, if this cause is affirmed, in addition to costs, the appellant should be assessed with

damages. However, this case is not one where damages may be imposed under Section 1971, Code of 1942.

Affirmed.

*Roberds, P. J.,* and *Hall, Holmes* and *Arrington, JJ.,* concur.

---

ON SUGGESTION OF ERROR

Apr. 13, 1953 27 Adv. S. 16 So. 2d

ARRINGTON, J.

The appellees suggest that the original opinion holds impliedly that the bonds were not advertised in accordance with law, and to that extent, it is erroneous, and should be modified.

The reference to Chap. 325, Laws of 1946, Sec. 4357-01, Code of 1942, Anno., was in answer to appellant's contention that the proposed sale and delivery of the bonds on five days notice was unlawful. The final order of issuance and for the sale was dated May 5, 1952. The bill of exceptions was signed by the president of the board on May 6, 1952. There was nothing in the record to show that the bonds were actually sold on May 10, 1952, or that they had been sold at all. The requirement for notice and the penalty for failure thereof, according to the provisions of Chap. 325, supra, and Sec. 4357-01, supra, was referred to solely for the purpose of saying that, if it should be conceded that the board was derelict in that respect, such dereliction would in no way invalidate the bonds.

The court dealt only with questions which had arisen at the time of the signing of the bill of exceptions. The original opinion did not intend to strike down or impair any of the provisions of the special act which was enacted

for the purpose of validating these bonds; and in our opinion, it does not do so in any way.

The suggestion of error is overruled.

*Roberds, P. J.,* and *Hall, Lee* and *Holmes, JJ.,* concur.