LEE COUNTY DRYS *v.* ANDERSON

No. 40450          May 13, 1957          95 So. 2d 224

*Mitchell & McNutt,* Tupelo, for appellants.

*John R. Anderson,* Tupelo; *Satterfield, Shell, Williams & Buford, K. Hayes Callicutt,* Jackson, for appellees.

ARRINGTON, J.

On September 3, 1954, John R. Anderson and others filed a petition with the Mayor and Board of Aldermen of the City of Tupelo purporting to contain the names of more than twenty percent of the qualified voters of said city, asking the Board to call an election under the provisions of House Bill 445, Chapter 501, Laws of 1950 (Sec. 10208.5, Mississippi Code of 1942), to determine whether or not beer could lawfully be sold, transported, etc., in the City of Tupelo.

On the same date, the Lee County Drys, through their attorney, filed a protest to said petition and requested a hearing thereon. The Mayor and Board of Aldermen had a hearing on the petitions on October 18, 1954, at which time the respective parties appeared and presented certain evidence. Subsequently, on November 24, 1954, the Mayor and Board of Aldermen voted four to two against

calling an election, dismissing the petition on the ground "that the action taken against calling an election was due to the fact that there was a doubt as to the petition being properly presented to the board."

The petitioners appealed by bill of exceptions to the Circuit Court of Lee County. The circuit court reversed the action of the mayor and board of aldermen in dismissing the petition and entered an order directing the board to proceed immediately in accordance with his opinion, which was to determine whether or not the petition contained the names of twenty percent of the qualified voters of the City of Tupelo, and if so to call an election. From this judgment, the Lee County Drys appeal to this Court and the appellees cross-appeal.

Section 10208.5, Mississippi Code of 1942, reads in part as follows:

"Any city in this state, having a population of not less than two thousand, five hundred (2,500) according to the latest Federal census, at an election held for the purpose, under the election laws applicable to such city, may either prohibit or permit the sale and receipt, storage and transportation for the purpose of sale of beer of an alcoholic content of not more than four per centum (4%) by weight. An election to determine whether such sale shall be permitted in cities wherein its sale is prohibited by law shall be ordered by the city council or mayor and board of aldermen or other governing body of such city for such city only, upon the presentation of a petition to such governing board containing the names of twenty per centum (20%) of the duly qualified voters of such city asking for such election. In like manner, an election to determine whether such sale shall be prohibited in cities wherein its sale is premitted by law shall be ordered by the city council or mayor and board of aldermen or other governing board of such city for such city only, upon the presentation of a peti-

tion to such governing board containing the name of twenty percentum (20%) of the duly qualified voters of such city asking for such election. Provided, however, that no election on either question shall be held by any one city oftener than once in five years. . . . . ''

The petition filed by the petitioners was addressed to the Mayor and Board of Aldermen of the City of Tupelo, and reads as follows:

''We the undersigned qualified voters of the City of Tupelo, Mississippi, do hereby respectfully petition and request you to call an election under the provisions of said House Bill No. 445, Laws of 1950, so that a majority of the qualified electors of said city voting in such election may determine whether beer of an alcoholic content of not more than 4% alcoholic by weight may be legally sold within the corporate boundaries of the City of Tupelo.

''We respectfully submit further that the undersigned constitute more than 20% of the qualified voters required by law.''

The petition purportedly contained the names of 786 qualified electors of the City of Tupelo. At the hearing on October 18, the appellants filed a counter petition signed by 89 of the qualified electors requesting that their names be removed from the said original petition; and the appellees filed a supplemental petition containing the names of 152 qualified electors who joined in the original petition asking for the election. W. T. Franks, City Clerk, filed an affidavit and also testified that he had examined the poll books of the City of Tupelo and the County of Lee and other necessary records and found that there were 3245 qualified electors in the City and that more than 20% of the qualified electors' names appeared on said petition.

John R. Anderson, an attorney and one of the petitioners, made affidavit to the petition containing the

names of 786 qualified electors and the supplemental petition of 152 additional qualified electors, and made oath that the signatures were genuine and that the persons whose names appeared thereon either signed said petition or authorized their names to be placed thereon.

The appellants introduced a number of witnesses who circulated the petition and obtained the names of 89 persons who had previously signed the petition seeking the election and requested that their names be removed from the said petition. They also introduced one witness who testified that she did not sign the original petition nor authorize any one else to sign for her.

The appellants contend that the lower court erred in reversing the order of the mayor and board of aldermen, and that the burden of proof was on the petitioners to prove that the signatures on said petition were genuine or authorized. The petition being regular and sufficient on its face, we are of the opinion that the affidavit of John R. Anderson as to the signatures on the petition, and the affidavit of the city clerk as to the number of qualified electors in the City of Tupelo, and that there were more than 20% of the qualified electors on said petition, was sufficient to make a prima facie case for the appellees.

The appellants challenged every signature on the petition, although the counter petition contained only 89 electors who requested that their names be removed from the original petition. It is reasonable to conclude that they would have obtained a sufficient number to reduce the number below the 20% required by law if this could have been done.

Section 10208.5 provides that an election shall be ordered upon the presentation of a petition to such governing board containing the names of 20% of the qualified voters asking for an election. It was the duty of the Mayor and Board of Aldermen to canvass the

names on the petition in order to determine whether or not such petition contained the required number of qualified voters, and to adjudicate this fact. Coleman v. Thompson, 216 Miss. 867, 63 So. 2d 533, and authorities there cited.

The appellant next contends that since Lee County voted out beer under Section 10208, Code of 1942, in 1939, that Section 10208.5 would permit elections only in cities located in counties which had not previously voted dry.

"Generally, the vote in a local option unit is binding on its entire territory, in the absence of some statutory provision to the contrary. The adoption of local option, for instance, by a county or district as a whole, prohibits the sale of liquor in any of the cities, towns, villages, or subdivisions therein, except where the vote in any municipality or subdivision is, by statute, made to operate independently of the general vote. Likewise, when the unit has adopted prohibition, it remains in force until it is revoked by a vote of the adopting territory as a whole, unless the statute confers on some portion of the unit the right to revoke independently of the whole. However, a vote may be taken in a town, although a local option law has been adopted in a precinct including the town, where, since the local option law was adopted, the town has been made a new political subdivision with power to vote on the liquor question." 30 Am. Jur., Intoxicating Liquors, Sec. 187. See Martin, et al v. Board of Supervisors of Winston County, 181 Miss. 363, 178 So. 315.

The appellant also contends that Chap. 252, Laws of 1956, which made it a violation of the law to have possession of beer in a county which had voted it out under Sec. 10208 was in conflict with Sec. 10208.5 and in effect repealed it. We find no merit in this assignment, since Chap. 252, Laws of 1956, neither expressly nor by

implication repealed the act in question. In the case of Russell v. State, No. 40485, decided May 6, 1957, this Court has construed Chapter 252, Laws of 1956, to mean that the possession of beer under the express terms of subsection (b) is made illegal only in counties which have held an election under the provisions of subsection (a) of the act. Therefore, this act does not render unlawful the possession of beer for personal consumption in Lee County.

This appeal is under Section 1195, Code of 1942, which provides for appeal to the circuit court from decisions of Boards of Supervisors and municipal authorities, as follows: ". . . and the court shall hear and determine the same on the case as presented by the bill of exceptions as an appellate court, and shall affirm or reverse the judgment; and if the judgment be reversed the circuit court shall render such judgment as the board or municipal authorities ought to have rendered, and certify the same to the board of supervisors or municipal authorities, . . . . . ."

■■ ■ The learned circuit judge correctly reversed the action of the mayor and board of aldermen in dismissing the petition, but he was in error in failing to enter a judgment directing the mayor and board of aldermen to call the election in accordance with Section 10208.5, Mississippi Code of 1942. Cf. Board of Supervisors of Quitman County v. State, 205 Miss. 43, 38 So. 2d 312.

It follows that the judgment of the court below is affirmed on direct appeal and on cross-appeal is reversed and remanded for judgment to be entered in accordance with this opinion.

Affirmed on direct appeal; reversed and remanded on cross appeal.

All Justices concur, except *Kyle, J.,* who took no part.