SMITH, Justice:
This is an appeal by L. P. Ratliff, Jr., and five other citizens and taxpayers from a decree of the Chancery Court of Lincoln County validating $1,500,000 (of an authorized issue of $1,650,000) of State Aid Road Bonds, ordered issued by the Board of Supervisors of Lincoln County under the provisions of Mississippi Laws of 1962 Chapter 255, for the purpose of raising money to construct roads known as “State Aid Roads.” These bonds were not general obligations of Lincoln County, but were payable from Lincoln County’s anticipated allocation of State Aid Road funds, as provided in Mississippi Code Annotated section 10127 (Supp.1964).
On March 11, 1966, the Board of Supervisors of Lincoln County adopted a resolution declaring its intention to • issue these *138 bonds at a meeting to be held on April 6, 1966, and stating that the bonds would be issued without an election, unless, on or before that date, twenty percentum of the qualified electors of the county should protest in writing against the issuance of the bonds, in which event, the bonds would not be issued unless their issuance should be authorized in an election to be called and held as required by law.
Notice was given, as required by Mississippi Code Annotated section 2926-55 (Supp.1964), by publication of this resolution in a newspaper, published and having .a general circulation in the county, on March 15, 22, and 29, and on April 5, 1966.
The Board met in regular session on April 4 and April 5, and on April 6, 1966, the Board adopted an order reciting that petitions had been received and filed on that date protesting the issuance of the bonds. This order recited that the Board should sit from day to day for the purpose of determining whether the petitions were sufficient to require the calling of an election upon the question of the issuance of the bonds. For the purpose of assisting in this determination, the County Election Commissioners were directed to investigate and determine the total number of qualified electors in Lincoln County,.as well as the number of signatures of qualified electors appearing on the protest petitions, and to report their findings to the Board on April 18th.
The Board met on April 7, 8, 9, 11, 13, and 15, but its minutes on those dates do not ; reflect that any action was taken essential to the issuance of the bonds.
On April 18, 1966, an- order was entered granting a request of the Election Commissioners for an extension of time until April 25th to enable them to complete their investigation.
On April 25th, the report of the Election Commissioners was marked filed by the Clerk of the Board and was recorded upon the minutes. This report showed that of a total of 3,388 signatures on the protest petitions, 3,065 were the genuine signatures of qualified electors, whose names appeared on the county poll books, and that the total number of qualified electors in Lincoln County was 13,491. The protest petitions also were recorded at length upon the minutes.
The minutes for April 25th recited further that the Board began and continued its investigation of the validity of the signatures on the protest petitions, as well as upon certain counter-petitions which also had been filed.
Afterwards, the Board met on April 26, 27, and 28, the minutes of April 27th reciting that the Board had met with a handwriting expert and had employed him to examine the signatures on the petitions. The minutes of April 28th reflect that the report of this expert had been received and it was also recorded upon the minutes.
The minutes of the April 28th meeting concluded, “After review of all of the facts, this Board determines that said matter shall be given further study and consideration and on motion, duly seconded, and unanimously carried, this matter is set for May 2, 1966, at 10:00 a. m. for further investigation, and this Board is now adjourned.”
On May 2, the first day of the regular May meeting, the Board adopted a resolution adjudicating that the protest petitions were insufficient to require the calling of an election, and directed the issuance of the bonds without an election.
On April 6, the date on or before which protest petitions were required to be filed, a three-judge federal court had declared unconstitutional the Mississippi poll tax, outlawing it as a qualification for voting. United States v. State of Mississippi, 359 F.2d 103 (5th Cir.1966). This decision followed the rule laid down by the Supreme Court of the United States in Harper v. Virginia State Bd. of Elections, 383 U.S. 663, 86 S.Ct. 1079, 16 L.Ed.2d 169 (1966). Persons who had not paid the poll tax, but who otherwise were qualified, under the *139 federal court decision, were lawful electors of Lincoln County and were entitled, as a matter of right, to be recognized and counted as such.
Validation proceedings were begun in the Chancery Court of Lincoln County, and appellants duly filed their protests in that court.
It was stipulated that on May 2, the date on which the Board of Supervisors made its adjudication as to the insufficiency of the protest petitions to require the calling of an election upon the question-of the issuance of the bonds, there were in Lincoln County 8,855 persons who had registered, qualified, and paid their poll taxes, and that if the protest petitions were related to this number they contained the signatures of a sufficient number of electors to require the calling of an election.
It was further stipulated that on that date, May 2, there were in Lincoln County 13,510 persons who were duly registered and qualified as electors, except as to the payment of poll taxes. Related to this number, the protest petitions did not contain the signatures of twenty percentum of the qualified electors of the county so as to require the calling of an election. ’
At the conclusion of the validation hearing, the chancellor found that the total number of qualified electors of Lincoln County, on the date of the Board’s adjudication, was 13,510; that the protest petitions did not contain the signatures of twenty per-centum of these qualified electors, and that the Board of Supervisors had acted within their lawful authority in declining to call an election.
A decree was entered validating the bonds and from that decree this appeal has been prosecuted.
Three grounds are assigned for reversal.
It is contended by appellants that all acts of the Board of Supervisors relating to the issuance of the bonds, as reflected by the minutes of meetings held on April 25, 26, 27 and 28, were illegal and void and violated Mississippi Code Annotated section 2877 (1956). That section provides that, in counties of the classification of Lincoln County, Boards of Supervisors may not sit in regular meeting for more than ten days,, with certain exceptions not here involved-The Board had met on April 4, 5, 6, 7, 8, 9, 11, 13, 15 and 18. On the other hand, appel-lee contends that the meetings of April 25’ through April 28 were adjourned meetings;, and that the meetings were valid.
It is not necessary to determine whether or not the meetings of the' Board held April 25 through April 28 were unauthorized under the provisions of Section 2877 for the reason that no act essential to the issuance, sale or validation of the bonds was attempted to be done by the Board at a meeting held upon any of those dates.
The resolution declaring its intention to issue the bonds had been duly adopted by the Board at its meeting of March 11, 1966, and its action, reflected by a resolution upon the minutes, adjudicating the insufficiency of the protest petitions and directing the issuance of the bonds without an election, was taken at its meeting on May 2. The validity of neither of these meetings is-challenged.
Appellant next contends that the coincidence of the deadline for filing protest petitions with the date upon which the federal court handed down its decision declaring unconstitutional the imposition of the Mississippi poll tax as a qualification for voting, substantially deprived them of their rights under Mississippi Constitution Article 3 section 14 and the Constitution of the United States Amendments 5 and 14. It is argued that, if it had been known that the total number of qualified electors would be increased by the addition of those otherwise qualified but who had not paid poll tax, additional signatures might have been procured upon the protest petitions, and that the signatures of such persons, otherwise qualified, who had not paid poll tax, and who were unaware that they were eligible to sign, could have been obtained.
*140 The inevitable effect of the decision was, of course, to increase the total number of qualified electors of Lincoln County by adding those persons who were otherwise qualified, but who had not paid poll taxes.
"When related to this number, the protest petitions were signed by fewer than twenty percentum of the total number of qualified ■electors of Lincoln County and were insufficient to require the calling of an election.
In view of the decision of the federal ■court, this was a fact beyond the power of the Board of Supervisors to alter, but of which they were bound to take cognizance.
The chancery court correctly concluded that the decision of the Supreme Court of the United States in Harper v. Virginia State Bd. of Elections, supra, and the April 6, 1966 decision of the Fifth Circuit Court of Appeals in United States v. State of Mississippi, supra, required the Board of Supervisors to base its determination as to the sufficiency of the protest petitions upon the number of qualified electors of Lincoln County without regard to the payment of poll tax.
It is next contended thát the date upon which the number of qualified electors of Lincoln County should have been determined was April 6, the date specified in the resolution adopted by the Board declaring its intention to issue the bonds. Appellants recognize that this contention is contrary to the rule laid down in Coleman v. Board of Supervisors of Choctaw County, 216 Miss. 867, 63 So.2d 533 (1953); Miles v. Board of Supervisors of Scott County, 200 Miss. 214, 26 So.2d 541 (1946); and Moffett v. Board of Supervisors of Attala County, 181 Miss. 419, 179 So. 352 (1938).
It is admitted that, in order to sustain this contention, it would be necessary to ■overrule these cases. No cogent reason has been assigned for changing the rule which they announce. It is one of long-standing in Mississippi, and appears, upon review, to be sound.
The chancellor correctly found that the issuance and sale of the bonds have been authorized by lawful orders, resolutions, and proceedings of the Board of Supervisors of Lincoln County, duly entered, adopted and had at meetings of the Board, held as authorized by law, and reflected by its official minutes. In making their determination as to the sufficiency of the protest petitions, both the Board and the chancellor were correct in computing the number of qualified electors necessary to constitute the required twenty percentum upon the basis of the total number of qualified electors of Lincoln County, without regard to payment of poll tax.
Affirmed.
ETHRIDGE, C. J., and GILLESPIE, INZER and ROBERTSON, TT., concur.