KING, JUSTICE,
concurring in part and in result:
¶ 31. While I agree with the result reached by the majority in Part One, I believe that the Board acted improperly in delaying its investigation to publish petitioners’ names in order to have the petitioners remove their names.
¶ 32. The key difference between the case at hand and the cases cited by the majority is that, in this case, the Board’s resolution takes affirmative action to encourage people to remove their names from the petition. The Board stated that the purpose of posting the petition was for the public to determine “if they signed or want their-names on the petition.” (Emphasis added). The use of the disjunctive “or” signifies that if a person signed and whether he or she wants his or her name on the petition are two different and separate inquiries. Obviously, if someone’s signature was forged, it is not valid, and a comparison to the voter rolls would likely reveal such invalidity. Thus, whether someone “wants their name” on the petition is an entirely separate inquiry than whether the signature/name is validly on the petition. The clear meaning is to allow people who validly signed the petition to change their minds and remove their names. Thus, the Board’s posting of names and signatures on the internet was for the admitted purpose, at least in part, of allowing people to change their mind and remove their names from the petition, given that the-stated purposes of the delay and name posting were to guard against fraudulent signatures, and to see if people “want their names on the petition.”
¶ 33. As the majority notes, “it is well-settled that it is the duty of a board of supervisors to canvass the names on petitions filed with it in order to determine whether or not such petitions contain the required number with the requisite qualifications, and, that in doing so, the board acts judicially.” Coleman v. Thompson, 216 Miss. 867, 63 So.2d 533, 535 (1953). Moreover, the Board must find the necessary facts to determine whether the required number of qualified electors had petitioned for an election. Id. I acknowledge that the majority is correct that it is clear that the Board need not begin the investigation immediately. In the Matter of the Validation of $30,000 Road and Bridge Bonds of 1960, Supervisors District No. 3, Neshoba County, Mississippi, 242 Miss. 125, 133 So.2d 267, 274 (1961). “Practical considerations may delay the canvass.” Coleman, 63 So.2d at 535. A board’s decision may be necessarily delayed to “afford an opportunity to itself and others to examine and verify the petitions and check their sufficiency. No action therein should be taken until it has determined this fact.” Id. (internal quotations omitted) (emphases added). Thus, the Board may examine and verify the petitions and check their sufficiency. The statute requires a certain number of qualified electors to sign the petition. Thus, under the statute and easelaw, the Board has every right, indeed, a duty, to determine whether the petition is proper under the statute, namely whether the signatures are those of qualified electors, and whether the proper number of signatures exists. However, nowhere in the statute or case- *724 law is any indication that persuading signers to remove their names from the petition is a proper purpose of the Board. In other words, whether someone who validly signed the petition continues to want his or her name on the petition is not a proper issue for the Board to investigate under the statute and caselaw, as it does not determine whether the signers are qualified electors nor whether the proper number of signatures exist. Further, such an objective neither “verifies the petition,” nor “checks its sufficiency.” It appears that the Board’s “investigation” in this case, by posting names to the public for the partial purpose of allowing people to change their minds, has no basis in statutory or caselaw. The Board may take what delay and action is necessary to verify the facts of the petition. Individual petitioners may change their minds and remove their names. However, the Board employing an investigatory delay simply to encourage people who validly signed the petition to remove their names has no basis in the statute or caselaw.
¶ 34. I agree with the majority that the delay by the Board did not waive the deadline. For more than fifty years, the law has been that signatures filed after the deadline are not counted — the objectors cannot claim insufficient notice of this concept. However, the Board, too, is held to its clear statutory deadline; it may not delay, as it did, at least partially in this case, when the delay is not for the purpose of engaging in verification of the petition. In my opinion, the remedy, however, is not to deem the statutorily mandated deadline waived, but to include any signatures improperly removed in the final count. In this case, nineteen people removed their signatures between May 6 and May 20, during the Board’s delay for, at least partially, purposes without statutory basis. I do not believe we need to decide whether or how those signatures should be “added back” to the petition,[11] because, even if they are added back in this case, the objectors still lack the 1,500 signatures needed to call for an election. Thus, I agree with the Court’s decision to affirm the chancery court on this issue, but I maintain that boards may only “delay” in order to verify petitions and check their sufficiency, as laid out in the statute and caselaw, and not for other purposes without a statutory basis.
RANDOLPH, P.J., KITCHENS AND PIERCE, JJ„ JOIN THIS OPINION.

. Certainly, if added back, concerns of whether the signers would have removed their signatures even absent the Board’s actions would arise.