In the Matter of the Validation of $30,000 Road and Bridge Bonds of 1960, Supervisors District No. 3, Neshoba County, Mississippi

In the Matter of the Validation of $40,000 Road and Bridge Bonds of 1960, Supervisors District No. 5 Neshoba County, Mississippi

No. 42062 September 25, 1961 133 So. 2d 267

*Laurel G. Weir*, Philadelphia, for appellants.

*William A. Bacon*, Jackson; *Stribling & Jones*, Philadelphia, for appellees.

Rodgers, J.

This litigation came to this Court from the Chancery Court of Neshoba County, Mississippi, where a hearing was had by the Chancellor to determine the validation of two separate bond issues of Neshoba County, one for the use of Supervisors District No. 3 in the sum of $30,-000, and one for the use of Supervisors District No. 5 in the sum of $40,000. The appellants filed objections to the validation of each bond issue in the Chancery Court, and by agreement the applications for validation of the two bond issues and the objections were heard together. The Chancellor made one ''finding of fact'' but entered two separate decrees validating the bond issue of $30,000 of

District No. 3 and a decree validating the bond issue for District No. 5 in the sum of $40,000.

The facts on which this appeal are based were stipulated and the issues were submitted to the Court for determination on questions of law.

The record reveals that the Board of Supervisors of Neshoba County, Mississippi, determined that it was necessary to construct roads, and to purchase land for that purpose and build bridges, and it therefore entered two wholly separate resolutions on the minutes of the Board of Supervisors to that effect. In both resolutions notice was given that an order would be entered authorizing the issuance of the separate bond issues unless twenty per cent of the qualified electors objected *on or before* Thursday, November 10, 1960, at the hour of 9 o'clock A.M. to the bond issue and requesting an election.

The following synopsis will itemize chronologically the meetings of the Board of Supervisors leading to the adoption of the two orders directing the issuance of bonds in Supervisors' Districts 3 and 5.

### OCTOBER MEETING 1960

| | |
|---|---|
| First Monday, Oct. 3, 1960 | Adjourned until tomorrow, Oct. 4. |
| Tuesday, Oct. 4, 1960 | Recessed until Oct. 11. |
| Tuesday, Oct. 11, 1960 | Recessed until Oct. 17. |
| Monday, Oct. 17, 1960 | |

On October 17, 1960, the Board adopted resolutions declaring its intention to issue bonds of Districts No. 3 and 5 for purposes of constructing, repairing roads, highways, bridges and buying machinery. The Board fixed November 10, 1960 at 9 o'clock A.M. as the time when the orders to issue the bonds would be entered unless objections were filed on or before that time.

## NOVEMBER MEETING

First Monday, Nov. 7, 1960 Adjourned to Nov. 8
Tuesday, Nov. 8, 1960 Recessed to Nov. 9
Wednesday, Nov. 9, 1960 Recessed to Nov. 10
Thursday, Nov. 10, 1960 Recessed to Nov. 14

On this date petitions were filed objecting to bond issue.

Monday, Nov. 14, 1960 Recessed to Nov. 17
Thursday, Nov. 17, 1960

The Board here entered an order continuing the matter of objection to bond issue *to regular December meeting*.

## DECEMBER MEETING

### First Monday, Dec. 5, 1960

Order adjudicating that less than twenty per cent of electors had filed objection and ordered that bonds be issued.

Recessed to Dec. 6, 1960.

On November 10, 1960, the date fixed in the resolutions for the orders to issue the bonds in the two districts, two separate petitions objecting to the issuance of the bonds in the district of the objector were filed by the qualified electors for District 3 and another for District 5. Each of these petitions contained more than twenty per cent of the qualified electors in the respective districts. This fact was not known at the time, and it became necessary for the Board of Supervisors to canvass the poll books to determine the number of qualified electors in each of the districts and to determine whether or not the names on the petitions were qualified electors. The matter was, therefore, continued over to the regular December meeting of the Board of Supervisors. After the petitions were filed objecting to the issuance of the bonds on the tenth day of November, and

before the matter was heard on December 5, a sufficient number of the objectors who had signed the petition asking for an election, withdrew their names so that after having subtracted the number of persons on the petitions who were not qualified electors in the districts in which they had filed their objection, and the names of the persons who desired to withdraw their objection, the list of objectors did not contain twenty per cent of the qualified electors necessary under the law (Sec. 2926-05, Miss. Code 1942, Rec.) to require the Board of Supervisors to call an election.

After November 10, 1960, but before the final order was entered on December 5, 1960, other and additional qualified electors in Supervisor's District No. 5 filed additional petitions objecting to the issuance of bonds in District No. 5. It was agreed that, if these additional names were added to the list of names left on the petition after the original petitioners had withdrawn, the total number of qualified electors left on the original petition and the new petition would have been more than twenty per cent of the qualified electors in District No. 5, who were then objecting to the issuance of these bonds in this district.

In addition to the foregoing facts it has also been pointed out that the newspaper misprinted the resolution for the issuance of bonds for District No. 5 so as to show that the District then owed $36.000.00, instead of $36,000.00. In other words, there was a decimal after the figure "thirty-six" rather than a comma. It is also shown that the order and notice printed in the newspaper had the additional words "including a motor grader", which were not written in the resolution, adopted by the Board of Supervisors for Districts No. 5 and 3.

The questions for determination here are: (1) Is the Board of Supervisors required to stay in session continuously for a period of time not to exceed the allotted days, or may the Board of Supervisors recess from time

to time, so long as the Board of Supervisors does not sit for a period of days not longer than allotted by law in any one month; and if the Board of Supervisors may recess from day to day so as to skip a day or days, is it necessary for the Board of Supervisors to set out in its minutes an order giving notice, itemizing each matter of business to be taken up at the recessed meeting during the allotted days in any one month? (2) Can the qualified electors who are invited under Sec. 2926-05, Miss. Code 1942, to file objections, file their objections after the date set out in the resolution for filing of objections, and before the date when the matter is finally determined by the Board of Supervisors so as to be counted among the twenty per cent of the electors objecting under the foregoing law? (3) Is there such a variance between the resolution to issue bonds and the notice and order of the Board of Supervisors by the use of the words "including a motor grader", as to vitiate the issuance of bonds sought for the purpose of buying road machinery, building roads, etc.? Finally, does the erroneous printing of the notice in the newspaper of the figure $36.000.00 vitiate the order issuing the bonds in District No. 5?

We have reached the conclusion that the answer to the above questions are all in the negative, and our reasons for so doing are set out in the following paragraphs.

In the outset it should be observed that the cases set out in the briefs offered by the litigants are not controlling in determining the questions here presented; because the statutory law has been changed consecutively by the Legislature of the State of Mississippi. These authorities are, however, very helpful to the Court, and move step by step with the onward growth of the law so as to furnish a historical background to the majesty and greatness of our Democratic system of laws, proving the ability of the people to change the law to meet new needs, progress and changing conditions.

When the question of the meeting of a Board of Supervisors first came under the observation of this Court in the case of Smith v. Nelson, 57 Miss. 138 (October term 1879), the law was uncomplicated, brief and relatively simple. It was as follows in Sec. 1353, Code of 1871: "The board of supervisors shall hold regular meetings on the first Monday of January, March, July and October of each year, and may continue in session for four days, and no longer. They shall also hold meetings at such other times as may be required by law; and the president, or two members of the board may call special meetings, when deemed necessary, on giving at least five days notice, by advertisement put up at the courthouse door, or published in a newspaper, and in case of the prevalence of a dangerous disease at the courthouse, such meetings may be called and take place elsewhere in the county."

The Smith case, supra, rightfully held in 1879 that the board of supervisors had no more power to adjourn by resolution or order from one term to a day intermediate between the day of adjournment and their next regular meeting than the Supreme, the Circuit, or the Chancery Courts had. This was also the holding of this Court in the case of Wolfe v. Murphy, 60 Miss. 14. The appellants' argument that the Board of Supervisors had no more right to its meeting than the courts, certainly would have been good argument in 1879.

Up to this time it will be noted that there was no authority for an "adjourned meeting". It was also pointed out in the case of Tierney v. Brown, 67 Miss. 109, 6 So. 737, that there was no authority for the board of supervisors to meet and accept a land-roll and levy a tax on a day three days after the expiration of the four days when the board might sit. Sometime, therefore, in the interim after these cases pointed out the need, the Legislature of Mississippi amended the law (Sec. 278, Code of 1892). and changed the statute so as to read: "For the

transaction of business under the revenue law, they may continue in session as long as business may require."

In the case of Davis v. Grice, Sheriff and Tax Collector, 141 Miss. 412, 106 So. 631, this Court pointed out that Sec. 298, Miss. Code 1906, (which by this time permitted adjourned meetings) required the order of the board of supervisors to be spread upon its minutes, calling an adjourned meeting and the order was required to specify each matter of business to be transacted at such meeting, and where an order which provided for a meeting of the board of supervisors at which a tax exemption was granted and the order failed to specify such exemption as a matter of business to be transacted thereat, the tax exemption was void. The Court said: "Since the board which granted this exemption was in session eight days, two beyond the time allotted therefor, it is unnecessary for us to decide whether or not a regular meeting of a board of supervisors must be continuous for the allotted time; that is whether the adjournment on each day must be to the next or may be to any later day, provided only the number of days consumed is not in excess of the maximum number allowed for a regular meeting."

In the year 1933, Sec. 203, Miss. Code 1930, was examined by the Court in the case of City of Grenada v. Grenada County, 167 Miss. 814, 150 So. 657, and the Court again pointed out that an adjourned meeting beyond the six days allotted to the board of supervisors for its regular meeting, when such time had been consumed was an adjourned meeting and as such no business could be transacted by the board which was not specified in the order calling the adjourned meeting. The Grenada case, supra, was cited with approval in the case of Simpson County v. Floyd, 192 Miss. 531, 62 So. 2d 581.

Section 202, Miss. Code 1930, was before this Court in the case of Byrd v. Byrd, 7 So. 2d 551, and in that case the Court held that a meeting held by the board where

the board of supervisors sat in its regular meeting from Monday, July 7, through Friday, July 11, and then adjourned over to the fourteenth without setting out in its adjourning order the particular business that would be taken up at the adjourned meeting was a void meeting although the board of supervisors had not used up its allotted number of days; because the board did not specify in its minutes the items of business to be considered at the adjourned meeting. This opinion was, however, withdrawn in the case of Byrd v. Byrd, 193 Miss. 249, 8 So. 2d 511, primarily on the ground that the matter taken up at the adjourned meeting was a revenue matter allowed by the above Sec. 202, Miss. Code 1930. The Court, however, pointed out that since the board of supervisors had adjourned on a day prior to its limited number of days allotted by law, the cases cited in the briefs (most of which are set out above) were not applicable to the case then before the Court.

The present law with reference to meetings of the boards of supervisors is Sec. 2877, Miss. Code 1942, as amended by Ch. 245, Laws 1950, and Sec. 2878, Miss. Code 1942, as amended by Ch. 243, Laws of 1950, and these Code sections are now as follows:

Section 2877: "At the meeting for the transaction of business under the revenue laws, the board of supervisors may continue in session as long as business may require, but at other regular meetings they may sit for a period not longer than ten (10) days in any one month; provided, that in counties having a population of more than forty thousand, and in counties having two court districts, the board may continue in session at any other regular meeting than revenue meetings of no longer than twelve (12) days in any one month; and provided, further, *that the board of supervisors may recess from time to time, subject to the limitation herein* provided, *to convene on a day fixed by an order of the board entered on*

*its minutes, and may transact any business coming be-fore it for consideration."*

Section 2878: The board of supervisors may, at a reg-ular meeting, by an order on its minutes, adjourn to meet at any time it may determine upon; and the president, or any three members of the board, may call special meet-ings when deemed necessary. Notice shall be given of all special meetings, for at least five days, by advertise-ment posted at the courthouse door, or published in a newspaper of the county, and the notice thereof, wheth-er posted or published in a newspaper, shall be entered in full on the minutes of said meeting. Provided, how-ever, that in cases of emergency arising as a result of serious damage to county property, or roads or bridges, or as a result of epidemic, or where immediate action is required for the repair or reconstruction of county roads or bridges, special meetings of the board of supervisors may be called, as provided herein, for the purpose of considering such emergency matters and taking approp-riate action with reference thereto, upon twenty-four (24) hours notice given to each member of the board of supervisors in person, or by leaving a copy thereof at his usual place of residence. The order providing for an adjourned meeting, and the notice of a special meeting, shall specify each matter of business to be transacted thereat; and at such adjourned or special meetings busi-ness shall not be transacted which is not specified in the order or notice for such meeting."

This Court held in the case of Hendrix v. Foote, 205 Miss. 1, 38 So. 2d 111, that under Secs. 2877 and 2886, Miss. Code 1942, that when the board of supervisors was transacting business under the revenue law it could re-cess from day to day without signing the minutes, pro-vided the minutes were signed before the board adjourn-ed, and although this decision was based upon the right of the board to stay in session so long as it was necessary to transact business under the Revenue Law the Court

said: "Section 2886 is very clear in its terms. The Board of Supervisors can meet, and recess from day to day without signing the minutes for any day's meeting and just so long as the minutes are signed on the last day the terms of both Sections 2877 and 2886 are literally complied with." The last part of Section 2877, supra, applies with equal force to regular meetings of the Board as to meetings held under the revenue law; because this Court held in the Hendrix case, supra: "Sections 2877 and 2876 are in pari materia and must be construed together and, if possible, read into each other, so as to make a consistent whole."

 It is apparent that the board of supervisors can recess from day to day, skip a day, and recess to a future day, so long as the days consumed do not exceed the days allotted to a county of a class less than 40,000. It is also apparent that it is not necessary for the board of supervisors to specify on its minutes the business to be transacted during a regular term although the board may have recessed to a future day in the month so long as the board has not consumed the days allotted to the county.

 When then, is the board of supervisors required to put on its minutes and in its order the items specifying the business to be transacted at an adjourned meeting? An adjourned meeting is a meeting that follows a regular meeting of the board of supervisors, it must therefore come after the board has finally adjourned its regular monthly meeting, and it is immaterial whether the full time allotted to the board for its regular monthly meeting has expired or not so long as the board has finally adjourned the regular meeting. All matters of business to be taken up at such an adjourned meeting must be set out on the minutes of the board of supervisors before they finally adjourn a regular session. Sec. 2878, Miss. Code 1942.

██ ██A special meeting of a board of supervisors is an entirely separate matter from that of a regular meeting, and may be called at any time upon compliance with Sec. 2878, Miss. Code 1942. A special meeting of the board of supervisors may be called for a time while the board of supervisors is in recess during the regular monthly meeting, or it may be set for a time in a future month.

██ ██ In the case at bar, the meeting held on Monday, October 17, (at the time when the resolutions were adopted) and the meetings during the month of November, were not void meetings, although the minutes of Monday, October 3, and Monday, November 7, used the word "adjourned" instead of "recess"; because in the first instance the order stated "adjourned until tomorrow", and in the second instance the order stated "adjourned to November 8", which was Tuesday, the following day, and it is apparent that in both instances there was a suspension of business rather than a termination. ██ ██ The minutes of boards of supervisors reciting their orders and judgments, like those of justices of the peace, will be looked upon with indulgence, and although unskillfully drawn, will be legally sufficient if their meaning can be ascertained by fair and reasonable interpretation. Martin v. Board of Supervisors of Winston County, 181 Miss. 363, 178 So. 315; Daniel O. Williams v. Cammack, 27 Miss. 209.

██ ██ The recessed meetings of the Board of Supervisors of Neshoba County were legal, authorized and regular, and their orders authorizing the issuance of bonds in the two districts were regular insofar as the meetings of the board were concerned. Neither are we impressed with the obvious error shown in the notice printed in the newspaper showing the bonded indebtedness of District No. 5 to be "$36.000.00" by putting the decimal point immediately after the figure "36", since

persons reading the notice could not have been misled by the apparent typographical error.

■■■ The contention that there is a fatal variance between the resolution of the board of supervisors declaring their intention to issue bonds for the purpose of constructing roads, buying land, building bridges, and buying machinery; and the published notice of the resolution, and the order directing the issuance of the bonds of Districts No. 3 and 5 in which was added the words "including a motor grader" is not well taken because these words are mere surplusage to the words "for the purpose of purchasing necessary machinery."

■■■ The appellants recognize in their brief that under the holding of this Court in the case of Coleman v. Board of Supervisors of Choctaw County, 63 So. 533, persons who have filed petitions objecting to a bond issue and asking for an election, have a right to withdraw their names before the matter is finally heard by the board of supervisors. This case also holds that the board of supervisors has the right to continue a matter to another meeting to give the board time to determine whether or not the petitions are sufficient to require the board to call an election. The appellants, however, state that at all times there were more than twenty per cent of the qualified electors of District No. 5 objecting to the order of the board directing the issuance of bonds, because as electors withdrew their names from the original petition, new petitions were filed by persons who were qualified electors in District No. 5. Petitioners state that "what is good for the goose is good for the gander," and if names may be withdrawn, others may be added, and this would be true if this were a game between lawyers, so that when one got names to withdraw, his opponent could get others to sign. The proceeding here is not such a game. The Board of Supervisors gave notice required by law to qualified electors living in the district, fixing the date for them to object if they desire their repre-

sentatives on the board to call an election in the district to determine whether or not persons who will be charged with the taxes desire to oppose the issuance of bonds for the benefit set out in the resolution, and when that date has passed, the matter is closed, and no new petitions may be filed, otherwise the matter would be difficult to conclude. On the other hand, parties may always dismiss their lawsuit, their claim, or their objections to a matter submitted to them as citizens and taxpayers. They, however, could not change their position, once having withdrawn or dismissed their claim, so as to file new petitions after the date set by the board of supervisors in the required resolution giving notice to those who desire to object; nor can qualified electors ignore the notice until after the date when objections are permitted to be filed, and then present their names upon a petition. Section 2926-05 expressly provided that if twenty per cent of the qualified electors "shall file a written protest against the issuance of such bonds on or before the date specified in the resolution" an election shall be called.

We now, therefore, hold that the date set out by the Board of Supervisors in its resolution acting under Sec. 2926-05, Miss. Code 1942, in which the qualified electors are given notice to file their objections to the issuance of bonds, on or by a certain date, is the final date on which objections may be filed to the issuance of bonds under this section.

We find no reversible error in the record in this case, and the order of the Chancellor validating the issuance of bonds in Districts 3 and 5 of Neshoba County should be, and is, hereby affirmed.

Affirmed.

*McGehee, C. J.,* and *Arrington, Ethridge,* and *McElroy, JJ.,* concur.