GRIFFIN, Justice,
for the Court:
This is an appeal by the Madison County Board of Education, from an April 29,1988, judgment of the Madison County Chancery Court refusing validation of general obligation school bonds of the Madison County School District in the principal amount not to exceed $19,800,000 pursuant to a Resolution of Intent adopted by the Madison County Board of Education on June 1,1987 to issue general obligation school bonds as authorized by § 37-59-1, et seq., Mississippi Code, Annotated (1972).
The Resolution of Intent required the resident electors of the school district to file any petitions requesting an election on the issuance of the bonds with the Board of Education by 6 o’clock P.M., June 26, 1987. At the designated date, time and location, the Board of Education met and acknowledged receipt of certain petitions requesting an election on the bond issue. The hearing on the sufficiency of the protest was eventually continued until July 16, 1987, when the Board of Education adopted its resolution adjudicating insufficiency of protest to the proposed bond issue.
On September 16, 1987, the Board of Education adopted a resolution authorizing and directing the issuance of the bonds of the school district as described in the June 1, 1987, Resolution of Intent, and again determining the insufficiency of the petitions.
An initial validation hearing was scheduled in January 1988 in the Madison County Courthouse in the City of Canton, Mississippi. Legal notice to taxpayers was duly published in the Madison County Herald. Objections to the validation were promptly filed on November 19, 1987. The objectors raised nine objections to validation of the bonds below. The chancellor took all under advisement and found all meritless except three, which are:
I.The Resolution of Intent declaring the intent to issue bonds was insufficient because it failed to give an approximate sum as to the amount to be spent on each item listed. The chancellor said, “I feel [the taxpayers] are entitled to a few more details.”
II.The notice of intent was insufficient because it gave a deadline for filing a petition that was not consistent with the board’s “final” order.
III.The assessed valuation of property within the Ridgeland Municipal Separate School District should not have been included in the total assessed valuation inasmuch as this area was not within the Madison County School District at the time of publication of the Resolution of Intent.
We disagree with the learned chancellor.
The above three matters are the only ones on appeal here. All other questions were decided adversely to the appellees and no cross-appeal was made; therefore, we are concerned only with assigned errors of the appellant where it alleged the chancellor erred in not validating the bonds.
I. The Resolution of Intent declaring the intent to issue bonds was insufficient because it failed to give an approximate sum as to the amount to be spent on each item listed. The chancellor said, “I feel [the taxpayers] are entitled to a few more details.”
Neither the chancellor’s opinion nor the appellees cite any authority requiring any finding by the school board in the initial resolution except those statutorily required. We, like the chancellor, feel the taxpayers might be entitled to a few more details as to what the money is to be spent for; nevertheless, we are bound by the plain words of the statute. Here there is no challenge to constitutionality of the statute. All the statute requires is “the approximate amount of the indebtedness to be incurred and the purpose or purposes for which the money so borrowed is to be *1027 expended, including the approximate cost of the alterations, additions and repairs to be made.” Section 37-59-11, Mississippi Code Annotated (1972).
Quite obviously, the resolution is in literal compliance with the statute and affords no basis for failure to validate the bonds. However, so that the point might be more vividly demonstrated, we copy the resolution and § 37-59-11 as it existed at the time of the resolution.
A RESOLUTION OF THE BOARD OF EDUCATION OF THE MADISON COUNTY SCHOOL DISTRICT DECLARING ITS INTENTION TO ISSUE GENERAL OBLIGATION SCHOOL BONDS OF THE MADISON COUNTY SCHOOL DISTRICT IN THE MAXIMUM AMOUNT OF $19,800,000 FOR THE PURPOSE OF REPAIRING, EQUIPPING, ENLARGING AND REMODELING EXISTING SCHOOL BUILDINGS AND RELATED FACILITIES, ERECTING AND EQUIPPING A NEW HIGH SCHOOL AND ELEMENTARY SCHOOL AND RELATED FACILITIES AND PURCHASING OF TRANSPORTATION VEHICLES FOR THE DISTRICT AS AUTHORIZED BY SECTION 37-59-1, ET SEQ., MISSISSIPPI CODE OF 1972, AS AMENDED BY CHAPTER 307, LAWS OF 1987.
WHEREAS, after due consideration and investigation, the Board of Education (the “Governing Body”) of the Madison County School District (the “District”) as trustees for the District, have determined that the school facilities for the District should be improved by repairing, equipping, enlarging and remodeling existing school buildings and related facilities; erecting and equipping a new high school and elementary school and related facilities; and purchasing of transportation vehicles for the District, the cost of which is hereby estimated to be Nineteen Million Eight Hundred Thousand Dollars ($19,800,000), and
WHEREAS, sufficient funds are not now available in the depository of the District to provide the aforesaid improvements and it is necessary that general obligation school bonds of said District be issued therefor under the provisions of Section 37-59-1, et seq., Mississippi Code of 1972, as amended by Chapter 307, Laws of 1987; and
WHEREAS, the power and authority to issue bonds on behalf of the District is vested by statute in the Governing Body of the District,
WHEREAS, the District is a duly and legally created, organized, existing and functioning school district in Madison County and in the State of Mississippi;
WHEREAS, it is necessary and in the public interest to issue general obligation school bonds of the District in the maximum principal amount of Nineteen Million Eight Hundred Thousand Dollars ($19,800,000) (the “Bonds”) for the purpose of repairing, equipping, enlarging and remodeling existing school buildings and related facilities; erecting and equipping a new high school and elementary school and related facilities; and purchasing of transportation vehicles for the District, for which sufficient funds are not now available in the depository of the District to provide for the aforesaid improvements; and
WHEREAS, the assessed valuation of all taxable property within the District, according to the last completed assessment for taxation, is the sum of One hundred thirty-eight million three hundred four thousand two hundred thirty-two and no/100 Dollars ($138,304,232.00) and that bonds of the District in the sum of $-0- are now outstanding; and that the issuance of said Bonds in said amount for said purposes, when added to the aforesaid indebtedness, will not result in the imposition upon any of the property in the District of any indebtedness for property in the district of any indebtedness for purposes authorized by Title 37, Chapter 59, Mississippi Code of 1972, as amended, of more than fifteen percent (15%) of the assessed value of all taxable property within the District according to the last completed assessment for taxation.
*1028 NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY OF THE DISTRICT, AS FOLLOWS:
SECTION 1. That the Governing Body of the District does hereby declare its intention to issue general obligation school bonds of the District in the maximum principal amount of Nineteen Million Eight Hundred Thousand Dollars ($19,800,000) (the “Bonds”) for the purpose of repairing, equipping,, enlarging and remodeling Flora Middle School, East Flora Elementary School, Luther Branson Elementary School, Velma Jackson School, Ridgeland Elementary School, Rosa Scott Middle School, Madison-Ridgeland Elementary School and the Business and Commerce Center and related facilities; erecting and equipping a new high school and elementary school and related facilities, and purchasing transportation vehicles for the District.
SECTION 2. That the Governing Body proposes to direct the issuance of all or any portion of the Bonds in the amount and for the purposes aforesaid at a meeting of the Governing Body to be held at its regular meeting place at the office of the County Superintendent of Education, Highway 22, Canton, Madison County, Mississippi, at 6:00 p.m. on the 26th day of June, 1987, or at some meeting held subsequent thereto, if twenty percent (20%) or Fifteen Hundred (1500), whichever is less, of the qualified electors in the District shall file a written petition with the Governing Body of the District on or before the aforesaid date and hour requesting that an election be called on the question of incurring said indebtedness, then the Bonds shall not be issued unless authorized at an election on the question of incurring said indebtedness, such election shall be called and held as provided by law. If no petition, or if an insufficient petition be filed, then the Governing Body shall be resolution spread upon its minutes, give final approval to the issuance of the Bonds, and shall authorize the issuance of the Bonds of the District.
SECTION 3. That this Resolution shall be published once a week for at least three (3) consecutive weeks in the Madison County Herald, a newspaper published in Madison County, Mississippi, having a general circulation in the District, and qualified under the provisions of Section 13-3-31, Mississippi Code of 1972. The first publication of this Resolution shall be made not less than twenty-one (21) days pri- or to the date fixed herein for the issuance of the Bonds, said Resolution being published on June 4, 1987, June 11, 1987; June 18, 1987; and June 25, 1987.
SECTION 4. That the Secretary of the Governing Body shall be and is hereby directed to procure from the publisher of the aforesaid newspaper the customary proof of said publication of this resolution and have the same before the Governing Body on the date and hour specified in Section 2 hereof.
SECTION 5. In the event a sufficient petition is timely presented, the Governing Body shall call for and conduct an election on the question of whether or not the bonds shall be issued, such election to be held as required by the laws of the State of Mississippi.
SO RESOLVED by the Madison County Board of Education, this the 1st day of June, 1987.
(Emphasis added).
§ 37-59-11. Calling of election on issuance of bonds.
[Until June 30, 1987, Section 37-59-11, Mississippi Code of 1972, shall read as follows:]
(1) Before any money shall be borrowed under the provisions of this chapter, the school board of the school district shall adopt a resolution declaring the necessity for borrowing such money, declaring its intention to borrow such money and to issue the negotiable bonds of the school district as evidence of same. The resolution shall also set forth the *1029 approximate amount of the indebtedness to be incurred and the purpose or purposes for which the money so borrowed is to be expended, including the approximate cost of the alterations, additions and repairs to be made.
(2) The resolution so adopted by the school board shall be published once each week for three (3) consecutive weeks in at least one (1) newspaper published in the school district involved, with the first publication thereof to be made not less than twenty-one (21) days prior to the date upon which the school board is to take final action upon the question of authorizing the borrowing of said money. If no newspaper is published in such school district, then such notice shall be given by publishing the same for the required time in some newspaper having a general circulation in said school district. If no petition requesting an election is filed prior to such meeting as is hereinafter provided, then the school board shall, at said meeting, by resolution spread upon its minutes, give final approval to the borrowing of said money and shall authorize the issuance of negotiable bonds of the school district by the board of supervisors or the governing authorities of the municipality, as the case may be.
(3) If at any time prior to said meeting a petition signed by twenty percent (20%) or fifteen hundred (1500), whichever is less, of the qualified electors of the school district involved shall be filed with the school board requesting that an election be called on the question of incurring said indebtedness, then the school board shall adopt a resolution calling an election to be held within such school district upon the question of the incurring of said indebtedness for the purposes and in the amount requested. Such election shall be called and held, and notice thereof shall be given, as provided in Sections 37-59-13 and 37-59-15.
II. The notice of intent was insufficient because it gave a deadline for filing a petition that was not consistent with the board’s “final” order.
Earlier cases interpreting similar statutes support the validation of the bonds on the question of notice.
Under Coleman v. Thompson, 216 Miss. 867, 63 So.2d 533 (1953) and In Re: Validation of $30,000.00 Road and Bridge Bonds, 242 Miss. 125, 133 So.2d 267 (1961), the chancellor clearly erred. Any difference between § 37-59-11, M.C.A. (Supp. 1987) as it existed prior to July 1, 1987 and § 2926-05 Code of 1942 is semantical. No real difference exists between § 37-59-11 quoted above and § 2926-05, Code of 1942, which in pertinent parts provides as follows:
§ 2926-05. Election to be called, when —exception in case of flood damage to roads and bridges.
Before issuing any bonds for any of the purposes herein enumerated, the board of supervisors shall adopt a resolution declaring its intention so to do, stating the amount of bonds proposed to be issued and the purpose for which the bonds are to be issued, and the date upon which the board proposes to direct the issuance of such bonds. Such resolution shall be published once a week for at least three (3) consecutive weeks in at least one newspaper published in such county. The first publication of such resolution shall be made not less than twenty-one (21) days prior to the date fixed in such resolution for the issuance of the bonds, and the last publication shall be made not more than seven (7) days prior to such date. If no newspaper be published in such county, then such notice shall be given by publishing the resolution for the required time in some newspaper having a general circulation in such county and, in addition, by posting a copy of such resolution for at least twenty-one (21) days next preceding the date fixed therein at three (3) public places in such county. If twenty per cent (20%) of the qualified electors of the county, supervisors district, or road district, as the case may be, shall file a written protest against the issuance of such bonds on or before the date specified in such resolution, then an election on the question of the issuance of *1030 such bonds shall be called and held as is herein provided. If no such protest be filed, then such bonds may be issued without an election on the question of the issuance thereof, at any time within a period of two (2) years after the date specified in the above mentioned resolution; provided, however, that the board of supervisors, in its discretion, may nevertheless call an election on such question, in which event it shall not be necessary to publish the resolution declaring its intention to issue such bonds as herein provided. (Emphasis added).
The Madison County School Board was operating under a code section that said a protest petition should be filed “at any time prior to said meeting,” meaning the date set forth in the resolution. Section 2926-05, supra, states simply that the protest petition “shall [be filed] on or before the date specified in such resolution.” We can discern no material difference in the language of the two statutes. Any difference is semantical, not real; therefore, the language of this Court in Coleman v. Thompson and In Re: Validation of $30,000 Road and Bridge Bonds, supra, is applicable.
In Coleman, supra, among other things, Justice Percy Lee had the following to say:
Now, it is well-settled that it is the duty of a board of supervisors to canvass the names on petitions filed with it in order to determine whether or not such petitions contain the required number with the requisite qualifications, and, that in doing so, the board acts judicially.
In Mohundro v. Board of Supervisors of Tippah County, 174 Miss. 512, 165 So. 124, 125, this Court said: “The entering of the order for the election is the entering of a judgment, notwithstanding such judgment is mandatory if the required facts authorizing it exist. The finding of the necessary facts to authorize the judgment and the entering of the judgment aré both judicial actions. In determining whether the required number of qualified electors had petitioned for an election, appellee was acting judicially, * * * See, also, Simpson County v. Burkett, 178 Miss. 44, 172 So. 329; Madison County v. Powell, 75 Miss. 762, 23 So. 425; Power v. Robertson, 130 Miss. 188, 93 So. 769; Green v. Houston, 139 Miss. 471, 104 So. 171; Costas v. Board of Supervisors, 196 Miss. 104, 15 So.2d 365, 16 So.2d 378, 154 A.L.R. 863; Costas v. Board of Supervisors, 198 Miss. 440, 22 So.2d 229; and Miles v. Board of Supervisors, Miss., 33 So.2d 810.
Practical considerations may delay the canvass. In Costas v. Board of Supervisors, reported in 196 Miss. 104, 15 So.2d 365, 267, 16 So.2d 378, 154 A.L.R. 863, the Court said: “A board, careful of its duty and responsibility and considerate as well of the interests of those affected, may be required by practical considerations to delay its decision in order to afford an opportunity to itself and others to examine and verify the petitions and to check their sufficiency. No action therein should be taken until it has determined this fact. Simpson County v. Burkett, 178 Miss. 44, 172 So. 329.”
Incidentally, argument is made here though held by the chancellor to be of no consequence, that names shall be allowed to be added or taken away. Coleman v. Thompson, supra, says they may be taken away but not added and the Court has spoken to the same question once again in In Re: Validation of $30,000 Road and Bridge Bonds, supra.
As a matter of fact, those two cases which review the law fully answer all inquiries in this case except the last one argued.
Suppose the notice read as the appellees contend it should have read, that is, no date given, then what?
The chancellor’s holding is contrary to established precedents; we therefore hold he was mistaken.
III. The assessed valuation of property within the Ridgeland Municipal Separate School District should not have been included in the total assessed valuation inasmuch as this area was not within the Madison County School District at the time *1031 of publication of the Resolution of Intent.
In November 1982 the State Educational Finance Commission approved the creation of the Ridgeland Municipal Separate School District. This district included the City of Ridgeland as well as territory outside of the city. All of the territory of the new Ridgeland District was ceded by the Madison County Board of Education from the Madison County School District and accepted by the Ridgeland District as required by § 37-7-101, et seq., M.C.A. (1972).
In June 1983, on joint motion in the U.S. District Court, the Ridgeland Municipal Separate School District and the Madison County School District moved to remove the Ridgeland School District from the ongoing proceedings in the original desegregation case styled Anderson v. Canton Municipal Separate School District, et al., C.A. No. 3700-(L) (S.D.Miss.). At approximately the same time the creation of the Ridgeland Municipal Separate School District was challenged under Section 2 of the Voting Rights Act of 1965 in Beamon v. The City of Ridgeland, 666 F.Supp. 937 (S.D.Miss.1987). The proceedings on the joint motion in Anderson were consolidated with the proceedings in the Beamon case and both matters were concluded by entry of a Consent Order where both the Madison County School District and Ridgeland withdrew the motion for approval of the Ridgeland Municipal Separate School District. The consent order was entered on July 29, 1986. It provides that the boards immediately begin the process of remerg-ing and adopt a remerger plan by February 1, 1987 and that the process of remerger should be completed no later than July 1, 1987. On June 25, 1987, the Board of Trustees of the Ridgeland Municipal Separate School District adopted an order abolishing the Ridgeland District and releasing the territory to the Madison County School District, effective 12:01 A.M. on July 1, 1987. On June 29,1987, the Madison County Board of Trustees annexed the territory of the Ridgeland District to the Madison County School District, effective 12:01 A.M. on July 1, 1987.
The Madison County schools were operating under a 1969 federal court order which required approval of the federal court before any change in the school system. This the Madison County School Board and the City of Ridgeland recognized inasmuch as they filed a joint petition seeking federal approval of the Ridgeland Municipal Separate School District. Later, of course, the Madison County School Board changed its mind as they had a constitutional right to do, and said, “No, we do not want Ridgeland taken from the County School District.” It could plausibly be argued that the Ridgeland Municipal Separate School District never as a matter of law existed. United States v. Scotland Neck Board of Education, 407 U.S. 484, 92 S.Ct. 2214, 33 L.Ed.2d 75 (1972); Milliken v. Bradley, 433 U.S. 267, 288-91, 97 S.Ct. 2749, 2761-63, 53 L.Ed.2d 745, 761-63 (1977); North Carolina Board of Education v. Swann, 402 U.S. 43, 45, 91 S.Ct. 1284, 1285, 28 L.Ed.2d 586, 589 (1971).
But further, two of the protestante, H.B. Wolcott and Gilbert W. Solleck, are the mayor and an alderman, respectively, of the City of Ridgeland, and were a party to a consent decree entered in federal court on July 29, 1986, which dismissed the petition seeking formation of the Ridgeland Municipal Separate School District and which, among other things, provided:
The voting changes to be occasioned by this Consent Order will be submitted promptly to the Attorney General for review pursuant to Section 5of the Voting Rights Act of 1965. Upon receipt of the necessary preclearance, residents of the Ridgeland Municipal Separate School District will be considered residents of the Madison County School District for purposes of elections, identifications of supervisor districts, and bond issues. (Emphasis added).
The preclearance was obtained months in advance of the June 1, 1987 date upon which the Madison County Board of Education adopted is Resolution of Intent.
The only argument concerning notice was whether or not the notice was given in *1032 a newspaper published within the area of the Madison County School System. Ap-pellees contend it should have been published in a Ridgeland publication. The chancellor held the Ridgeland publication was not a newspaper and that the Madison County Herald was, and his ruling thereon is not appealed. Therefore, the only question is whether or not the Madison County School Board was mistaken in including the assessed valuation of the Ridgeland Municipal Separate School District in the total valuation of the County District when the Resolution of Intent was adopted. We hold it was not. The Ridgeland Municipal Separate School district was in effect already abolished.
Section 37-59-5, M.C.A. (1972) provides:
§ 37-59-2. Limitation of indebtedness.
No school district shall, except as provided in section 37-59-7, hereafter issue bonds for the purposes authorized by law in an amount which, added to all of its then outstanding bonded indebtedness, shall result in the imposition on any of the property in such district of an indebtedness for school purposes of more than fifteen per cent of the assessed value of the taxable property within such district, according to the then last completed assessment for taxation, regardless of whether any of such indebtedness shall have been incurred by such district or by another school district or districts. (Emphasis added).
The key words in this statute as it relates to the case sub judice are “issue bonds.” The statute does not say “commence the process of issuing bonds.” The term issue when used in connotation with bonds has a clear and accepted legal meaning:
... [I]t is held that a bond or other obligation is issued when it is executed in the sense of signed and delivered to a purchaser regardless of its date and that such obligations are not issued until they are sent out, delivered or put into circulation and are not operative prior to this. Accordingly, it has been held that school bonds are issued, not at the time of the resolution of the board of education to issue bonds, but at the time of delivery to the purchaser_ (Emphasis added). 64 Am.Jur.2d, Public Securities and Obligations, § 208.
No argument is made that the valuation is in error but simply that the property of the Ridgeland Municipal Separate School District could not be included. Even if we held that they could not include the Ridge-land Municipal Separate School District before July 1, 1987, we are of the opinion the issuance of bonds would be valid as there would be no question concerning the consolidation or re-merger on the date the bonds are actually issued.
No bonds were issued prior to the completion of the merger of the school districts. There was no “imposition on any of the property in such school district of an indebtedness for school purposes of more than fifteen percent of the assessed value of the taxable property.”
In this regard, the Florida Supreme Court stated in State ex rel. Woman’s Catholic Order of Foresters v. City of Fort Myers, 143 Fla. 304, 196 So. 705 (1940):
Issue of bonds does not occur until duly executed and delivered. In City of Jacksonville v. Renfroe, 102 Fla. 512, 136 So. 254, 255, it was held that “ ‘issue’ means the first delivery of the instrument complete in form to a person who takes it as a holder.” See also, Duncan v. Cady, 109 Fla. 491, 149 So. 549.
In accord, the Louisiana Supreme Court said in Shadow v. Rapides Parish School Board, 220 La. 302, 56 So.2d 555 (1951):
It is elementary that the authorization of a bond issue does not create an obligation until the bonds are issued and outstanding. 15 McQuillin, Munic. Corps. (3d Ed., 1950), Sec. 43.48, p. 564.
The general rule is that bonds are issued, not when they are authorized or executed, but when they are delivered. 64 C.J.S., Municipal Corporations, § 1948 (1950). Following the general rule, this Court has held a bond is not issued until it has been delivered to the purchaser or otherwise put into circülation. Love v. Mayor and Board *1033 of Aldermen of Yazoo City, 166 Miss. 322, 148 So. 382 (1933).
In the matter before us, final approval to borrow the money was given and the issuance of the bonds authorized, but the bonds were not issued prior to the merger of the two school districts.
REVERSED AND REMANDED FOR ENTRY OF APPROPRIATE VALIDATION ORDER CONSISTENT WITH THIS OPINION.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.